

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

JUN 17 2008
SUN 17, 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

United States of America ex rel.

Sherman Johnson, N-23009

(Full name and prison number)
(Include name under which convicted)

PETITIONER    Sherman Johnson

vs.

Donald A. Hulick

(Warden, Superintendent, or authorized
person having custody of petitioner)

RESPONDENT, and

**(Fill in the following blank only if judgment
attacked imposes a sentence to commence
in the future)**

ATTORNEY GENERAL OF THE STATE OF

Lisa Madagan -Illinois

(State where judgment entered)

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

08CV3474
JUDGE DER-YEGHIAYAN
MAGISTRATE JUDGE COLE

Case Number of State Court Conviction:

No.96-CR-19599

### PETITION FOR WRIT OF HABEAS CORPUS – PERSON IN STATE CUSTODY

1.  Name and location of court where conviction entered: Circuit Court of Cook County Criminal

    Division,2650 s. Califoria, Chicago,Illinois 60608

2.  Date of judgment of conviction:  August 19,1997.

3.  Offense(s) of which petitioner was convicted (list all counts with indictment numbers, if known)
    count 1and 2,first degree mur,count5,solicitation of mur, for hire.count 6,
    solicitation of mur;and count 10,conspiracy to commit first degree murder.

4.  Sentence(s) imposed: Natural Life imprisonment

5.  What was your plea? (Check one)    (A)  Not guilty    ( x )
                                        (B)  Guilty       (   )
                                        (C)  Nolo contendere ( )

    If you pleaded guilty to one count or indictment and not guilty to another count or indictment, give details:

Revised: 7/20/05

## PART I – TRIAL AND DIRECT REVIEW

1. Kind of trial: (Check one):    Jury ( )    Judge only (x )

2. Did you testify at trial?    YES ( )    NO    (x)

3. Did you appeal from the conviction or the sentence imposed? YES ( x ) NO ( )

   (A) If you appealed, give the

   (1) Name of court: Appellate Court of Illinois,First Judicial District.

   (2) Result: Conviction and Sentence "Affirmed"

   (3) Date of ruling: June 18,1999

   (4) Issues raised: The issues are the same raised in this petition for writ of Habeas Corpus ,ground (1) thur (10) are exactly the same as was raised on my Direct Appeal.

   (B) If you did not appeal, explain briefly why not:

   N/A

4. Did you appeal, or seek leave to appeal, to the highest state court? YES (x )    NO ( )

   (A) If yes, give the

   (1) Result: Leave to Appeal was denied

   (2) Date of ruling: Octtober 6,1999

   (3) Issues raised: The same issues raised on direct appeal are the same issues raised to the highest state court and the same thats being raised in this petition ground (1)thur (10)

   (B) If no, why not:

5. Did you petition the United States Supreme Court for a writ of *certiorari*? Yes ( ) No ( x )

   If yes, give (A) date of petition: _____ (B) date *certiorari* was denied: _____

2

Revised: 7/20/05

## PART II – COLLATERAL PROCEEDINGS

1. With respect to this conviction or sentence, have you filed a post-conviction petition in state court?

   YES (x)  NO ( )

   With respect to *each* post-conviction petition give the following information (use additional sheets if necessary):

   A. Name of court: __Circiut Court of Cook County__

   B. Date of filing: __April 4,2000__

   C. Issues raised: __The iusses raised in my post – conviction petition are the same two issues being raised in this petition ground 11 and ground 12,the issues are vast need to add additional pages.__

   D. Did you receive an evidentiary hearing on your petition?      YES ( )  NO (x)

   E. What was the court's ruling? __it was dismissed,court simply stated that strickland not satisfied as to prongs.__

   F. Date of court's ruling: __February 3,2005__

   G. Did you appeal from the ruling on your petition?      YES (x)  NO ( )

   H. (a)  If yes, (1) what was the result? __it was affirmed__

             (2) date of decision: __September 28,2007__

      (b)  If no, explain briefly why not: __N/A__

   I. Did you appeal, or seek leave to appeal this decision to the highest state court?

   YES (x)   NO ( )

      (a)  If yes, (1) what was the result? __Leave to appeal was denied__

             (2) date of decision: __January 30,2008__

      (b)  If no, explain briefly why not: __N/A__

Revised: 7/20/05

2. With respect to this conviction or sentence, have you filed a petition in a **state court** using any other form of post-conviction procedure, such as *coram nobis* or habeas corpus?    YES ( )        NO (X)

    A. If yes, give the following information with respect to each proceeding (use separate sheets if necessary):

        1.    Nature of proceeding       N/A

        2.    Date petition filed        N/A

        3.    Ruling on the petition     N/A

        4.    Date of ruling         N/A

        5.    If you appealed, what was
              the ruling on appeal?        N/A

        6.    Date of ruling on appeal    N/A

        7.    If there was a further appeal,
              what was the ruling ?       N/A

        8.    Date of ruling on appeal    N/A

3. With respect to this conviction or sentence, have you filed a previous petition for habeas corpus in **federal court**?    YES ( )    NO (X)

    A. If yes, give name of court, case title and case number:    N/A

    B. Did the court rule on your petition? If so, state

        (1) Ruling:    N/A

        (2)   Date:    N/A

4. With respect to this conviction or sentence, are there legal proceedings pending in any court, other than this petition?    YES ( )        NO (X)

If yes, explain:    N/A

Revised: 7/20/05

## PART III – PETITIONER'S CLAIMS

1.  State briefly every ground on which you claim that you are being held unlawfully.  Summarize briefly the facts supporting each ground.  You may attach additional pages stating additional grounds and supporting facts.  If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds later.

**BEFORE PROCEEDING IN THE FEDERAL COURT, YOU MUST ORDINARILY FIRST EXHAUST YOUR STATE COURT REMEDIES WITH RESPECT TO EACH GROUND FOR RELIEF ASSERTED.**

(A)  Ground one   No rational trier of fact could have found the defendant
     Supporting facts (tell your story briefly without citing cases or law):

accountable for the murder of Dora Cobb beyond a reasonable doubt based on

the incredible testimony of Kalesha Webb,Theresa Johnson,and Adonis Head.

The petitioner asserts that his U.S. Constitutional rights were violated,

under the due process clause of the 14th amend,Where the prosecutor is

required to prove beyond a reasonable doubt every element of the crime with

which a defendant is charged. Petitioner also asserts that his U.S. con-

stitutional rights were violated under the confrontation clause rights of

the 6th amend,which provides a criminal defendant the right to directly

encounter adverse witnesses and the right to cross-examine adverse witness

-es and their testimonal evidence. see additional pages.

(B)  Ground two   No Rational trier of fact could found the defendant account
     Supporting facts:

-able for the murder of Dora Cobb beyond a reasonable doubt without the errone

-ously admitted Statements attributed to the non-testifying Co-defendant

Michelle Clopton.The petitioner asserts that his U.S.Constutional rights were

violated under the due process clause of the 14th amend,Where the prosecutor

is required to prove every element beyond a reasonalbe doubt of the crime

with which a defenant is charged.Petitioner also asserts that his U.S. Con-

stitutional rights were violated under the confrontation clause right of the

6th amend,which provides a criminal defendant the right to directly encounter

adverse witnesses and the right to crossexamine adverse witnesses see ,

additional pages.

Revised: 7/20/05

(C) Ground three  It was an abuse of discretion to admitt the Statements
Supporting facts:

  attributed to the non-testifying Co-defendant Michelle Clopton Where the
proper foundation had not been made.Petitioner asserts that the abuse of
discretion prejudiced the petitioner violating his Constitutional rights under
due process clause of the 14th amend ,also violating his U.S Constitutional
rights under the confrontation clause rights of the 6th amend,see additional
pages.

(D) Ground four  It was an abuse of discretion to admitt the statements attrib-
Supporting facts:
uted to the non -testifying Co-defendant Michelle Clopton Where those statement
-s amounted to hearsay.Petitioner asserts that the abuse of discretion pre-
judiced the petitioner violating his U.S Constitutional rights under the due
 process of the 14th amend.Also violating his U.S.Constitutional rights under
the 6th amend,under the confrontation clause right toscross-examine adverse
witnesses and their testimonal evidence.

2.  Have all grounds raised in this petition been presented to the highest court having jurisdiction?

   YES (x)  NO ( )

3.  If you answered "NO" to question (2), state briefly what grounds were not so presented and why not:

    N/A

Revised: 7/20/05

## PART IV – REPRESENTATION

Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(A)  At preliminary hearing _____

(B)  At arraignment and plea  Dennis Sherman _____

(C)  At trial Dennis Sherman _____

(D)  At sentencing Dennis Sherman _____

(E)  On appeal Todd Berg _____

(F)  In any post-conviction proceeding Winona j. Agbabiaka,Mark J,Mickiewicz,Barbara Kamm

(G)  Other (state): _____

## PART V – FUTURE SENTENCE

Do you have any future sentence to serve following the sentence imposed by this conviction?

YES (  )  NO (X )

Name and location of the court which imposed the sentence:  N/A _____

Date and length of sentence to be served in the future  N/A _____

WHEREFORE, petitioner prays that the court grant petitioner all relief to which he may be entitled in this proceeding.

Signed on: **6/12/08**
(Date)

_____None_____
Signature of attorney (if any)

**I declare under penalty of perjury that the foregoing is true and correct.**

_Sherman Johnson_
(Signature of petitioner)

N-23009 _____
(I.D. Number)
Menard Correctional center ,P.O.Box 711
Menard Illinois ,62259.
(Address)

7

Revised: 7/20/05

(A) Ground one and additional pages : see 5,8,9,10,11,12.

(B) Ground two and additional pages ,see 5,12,13.

(C) Ground three and additional pages,see 16,15,15,15,17,

(D) Ground four and additional pages,67,17,18,19

(E)Ground five and additional pages see,19,20,21,

(F) ground six and additional pages see,22,23,24,25.

(G)Ground seven and additional pages see,25,26,27,28,29.

(H)Ground eight and addititional pages see,29,30,31,32,

(I)Ground nine and addititional pages see,32,33,34,

(J)Ground ten and additional pages see,34,35.

short statements of facts,see pages,36,37,38,39,40,41

(K)Ground eleven and additional pages see,42,43,44,45,46,47,48,49.

(L)Ground twelve and additional pages see,49,50,51,52,53,54,55,56,57,58,59,
60,

<u>INDEX</u>

<u>EXHIBITS</u>: and Evidences;

EXHIBIT (A) Adonis Heads  rap sheet

EXHIBIT (B) Sherman Johnsons affidavit

EXHITBIT (C) Sherman Johnsons affidavit

EXHIBIT(D)  Raynard Cloptons affidavit

EXHIBIT (E)  Leroy Wilsons     affidavit

EXHIBIT (F)  Brian Johnsons     affidavit

EXHIBIT (G)  Brian Johnsons     affidavit

IN FORMA PAUPERIS  APPLICATION / FINANCIAL AFFIDAVIT

EXHIBIT (H)  Letter from attorney stateing he cant provide pro-bono help

EXHIBIT (I) Letter from attorney stateing he cant provide pro-bono help.

EXHIBIT (J) Letter from attorney stateing he cant provide pro-bono  help

MOTION FOR APPOINTMENT OF COUNSEL

Menard Correctional Center ,Sherman Johnson trust fund for pass 6 months

(A) Grounds one additional pages,

In considering a defendants challenge to the sufficiency of the evidence ,the relevant question is whether after viewing all the evidence in the light most favorable to the proescution ,any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

Before considering the credibility of the testimonial evidence presented by the State,several observations  must first be made.

Not one of the witnesses who testified against the defendant at trial actually witnessed Dora Cobb's murder.

Not one of the witnesses who testified against the defendant at trial actually saw Dora Cobb in the presence of John Knight,Ebony Reynolds,Kimber -ly Head or Michelle Clopton on March 1,1996.

Not one of the witnesses who testifed against the defendant at trial came forward with their stories until almost 3 months after Dora Cobb had been killed.

No fingerprints or physical evidence belonging to the defendaant or the co-defendants was recovered from the crime scene or the victim.

No.380 firearm,matching the ballistic evidence tested in this case, or otherwise capable of firing a 380.bullet.

The only evidence that the State presented in its effort to prove the defendant accountable for the murder of Dora Cobb was the testimony of Kalesha Webb,Theresa Johnson,and Adonis Head.

with the deficiencies described above and absence of credibility in the  States witnesses'testimony,no rational trier of fact could have found the defendant accountable for the murder of Dora Cobb beyond a reasonable doubt.

(8)

Adonis Head was not a credible witness.

At the time of his testimony in August 1997,he had been convicted of a felony offense; delivery of a controlled substance.(R.E4)

Head testified that he had previously earned 1,000 dollors per day distributing drugs and collecting money from drug sales. (R.E5 to E7)

Not only did the delivery conviction impeach Head's character,but his testimony about how he made his living demonstrates that there is nothing believeable about him. As a man who admittedly ,and no doubt,flagrantly broke the law daily to earn 1,000 dollars,how can one possibly be expected to believe that Head has any more respect for the law in the courtroom, especially when ignoring his oath to tell the truth and saying what the prosecution wanted to hear could have paid off in ways that money couldnt even touch; freedom.

At the time of his testimony ,Head was residing in the cook county jail on a pending delivery of controlled substance case. (R.E3,E4) He had been assured by the State's Attorney's office that,in exchange for his testifying against the defendant,the State's Attorney's Office would speak favorably on his behalf should he be convicted and sentenced on the pending delivery charge. (R.E3,E4) When a witness,such as Head,has hopes of being rewarded for his or her testimony ,the testimony should not be accepted unless it has the absolute conviction of truth.

If the above is not enough to convince that Head's testimony lacked a "absolute conviction of truth",then the fact that much of his testimony was being told for the very first time at trial should.

Dora Cobb was murder on March 1,1996,Almost 3 months later,in May 1996, Head gave a written statement to the police,telling them what he saw and what he heard in connection with the death of Dora Cobb. (R.E31) In that Statement,Head never mentioned seeing the defendant hand a gun to Michelle Clopton nor did he mention that the defendant was involved in killing some body.(R .E47,E48).

(9)

On August 18 1997,however,seventeen months after Dora Cobb was killed and fifteen months after giving a statement of "what he saw and what he had heard" to police ,Head took the witness stand against the defendant and s said these exact things,for the first time. When a witness ,like Head,given an earlier opportunity fails to assert a fact,the credibility of his later testimony as to the existence of such fact is adversely affected.

That Head allegedly saw the defendant hand a gun to Michelle Clopton and that he allegedly had information that the defendant was involved in killing somebody are fact of such a character that if they were true their inclusion in his May 1996 statement would have been expected and their omission would not have been expected.

Head,however,was not the only witness for the state suffering from impaired credibility.

Like Adonis Head,Theresa Johnson also made her living in the drug business.(R.D98) And,also like Adonis Head,given that she breaks the law daily to make a  living,one can not be expected to believe that once she steps in to a courtroom she developes a sudden loyalty to the demands of the law.

Why should anyone assume that the"oath" she took in court would anymore prevent her from advancing her agenda than it would  have prevented Head from trying to gain his freedom.

According to Johnson's testimony,by selling drugs for the defendant,she made 1 dollar for every 9 dollar he made; yet she was assuming all of the risk .(R.D99).She risked getting robbed.She risked getting killed.She risked getting arrested.And all the while the defendant is getting rich. What sweet revenge it would have been to "send up " the defendant as pay back for his exploitation of Johnson.

Or perhaps Johnson just fell into the category of "notorious liars" that many courts has recognized that "habitual user"of narcotics become notorious liars".

(10)

Johnson told the court that her drug of choice was "weed".I smoke weed".
(R.D123) Whether she qualified as a"habitual user",however,is not entirely
clear. What is clear though is that many courts have the understanding that
being a narcotics user and being a liar go hand in hand,with the degree of
one affecting the degree of the other and Johnson is such a witness.

Kalesha Webb must be viewed in the same light as Theresa Johnson.like
Johnson ,Webb made her living selling drugs and during the time periods at
issue in this case ,she was smoking "weed" as well.(R.D37,D48) Further,Webb
also demonstrated some of the same peculiarities exhibted by Head.Specific
ally, Webb testified at trial to things that she had never before mentioned
On may 26,1996,when she gave her written statement to the police,she never
mentioned having overheard Michelle Clopton say something about"fooling her
into going through the woods to get a bag of weed",she never mentioned hav
-ing overheard that Dora Cobb was shot in the forest preserve;and she never
mentioned having overheard anyone say that Dora Cobb had been shot.(R.D50)

At trial in August 1997 ,however this was precisely her testimony.
Seventeen months after the murder ,Webb claimed to have remembered details
that she did not even mention when  she talked to police  only three months
after the murder.That is not just strange.That is unbelieveable."Ordinarily
,the weight to be given to the testimony of witnesses who have given direct
testimony of the commission of an offense by an accused is for the trier of
fact even though the witness was thoroughly impeach.Nevertheless,in some
instances the im peachment and the inherent weakness of the testimony requ
ires as a matter of law that the accused be acquitted.

This is such a case.

based on the foregoing ,no rational trier of fact could have found
defendant accountable for the murder of Dora Cobb beyond a reasonable doubt
based on the incredible testimony of the states witness .

(11)

Also base on the foregoing reason already stated above and the fact that the state witnesses incredible testimony was nothing more than a mere narrative of a story never proven by evidence or facts.The state failed to prove every element of the crime beyond a reasonable doubt with which a defendant is charged.The petitioner asserts that state is holding him accountable ,unlawfully for a mere narration not evidence not fact violating his U.S Constitutional rights to due process under the 14th amendment and violating his U.S Constitutional rights under the confrontation clause 6th Amendment rights to directly crossexamine adverse witnesses.

(B) <u>Ground two additional pages</u>

In considering a defendat's challenged to the sufficiency of the evidence ,the relevant question is whether after viewing all the evidence in light most favorable to the proescution , any rational trier of fact could have found the esstential elements of the crime beyond a reasonable doubt.

Under 720 ILCS 5/9-1(a)(1)and(2)",(A) person who kills an individual without lawful justification commits first degree murder if, in performing the acts which cause death;(1) he either intends to kill or do great bodily harm to that individual or another ,or know that such acts will cause death to that individual or another; or(2) he knows that such acts create a strong probability of death or great bodily harm to that individual or another.

Under 720 ILCS 5/5-1, a person is responsible for conduct which is an element of the offense if the conduct is...that of another and he is legally accountable for conduct as provided in Section 5-2

"Another" is defined as "a person or person...other than the offender. 720 ILCS 5/2-3.

(12)

And "conduct" is defined as" an act or series of acts..." 720 ILCS

5/2-4. A person is legally accountable for the conduct of another when...

either  before or during the commission of an offense,and with the intent

to promote or facilitate such commission,he solicits,aids,abets,agrees or

attempts to aid,such other person in the planning or commission of the

offense .   720 ILCS 5/5-2(c).

Therefore ,by virtue of the statutory language,identity of the

"another" as well as the"conduct" are essential elements of any prosecution

based on a theory of accountability and must be proven beyond a reasonable

doubt in order to sustain a conviction. 725ILCS 5/3-1.

"The state bears the burden of proving beyond a reasonable doubt the

identity of the person who committed the charged offense".Also in every

murder prosecution,proof of death and proof of criminal agency causeing

death are elements the state must prove beyond a reasonable doubt".

The statements at issue are attributed to the non-testifing

co-defendant, Michelle Clopton.They came into evidence through the state,s

witnesses Kalesha Webb.and Theresa Johnson,and without these statements,

the state would have had no evidence as to the"another" as well as the"con-

duct"for whom and for what the state sought to prove the defendant account-

able.

Furthermore the pettitioner asserts his U.S. Constitutional rights

were violated under due process clause of the 14th Amendment because the

state erroneously  Admitted Statements attributed to the non-testifiing co-

defendant Michelle Clopton and his U.S Constitutional rights were violated

under the 6th amendment rights to confrontation.clause.because the petitioner

could not crossexamine the statements attributed to the non-testifing co-

defendant Michelle Clopton because she was not testifing to these statements

attributed to her.

(13)

(C) Ground three additional pages.

The admission of evidence is within the sound discretion of the trial court and its ruling should not be reversed absent a clear showing of abuse of that discretion.


A proper foundation must be laid for the admission  of all conversations and such foundation consists of : (1) the identity of the parties;(2) testimony as to the time when the conversation took place;(3) testimony as to the place where the conversation was had;(4) testimony as to who was present at the time and place;and,(5)testimony as to what was said during the conversation.

In Addition to foundation for the conversation itself,all oral state -ments must be authenticated. This authentication consists fo identifiying the speaker.

The proponent of an oral statement may use lay opinion testimony to authenticate the oral statement. Specifically,the witness must testify that he or she is familiar with the person's voice.

The elements of the foundation are as follow; at a specific time and place,the witness heard a voice; (2) the witness recognized the voice as that of a certain person;(3) the witness is familiar with thatpersons voice; (4) the witness explains that basis for his or her familiarity with that person's voice; and,(5) the person made a statement during the conversation.

Here,not only did the state fail to lay a foundation for the conversations that were overheard,but it also failed to lay a foundation to authenticate the oral statements contained in the conversations that were over heard..

(14)

As to the foundation for the conversations,generally,the state's evidence fails on several accounts.Neither Webb nor Johnson are able to testify as to "the time when the conversations took place." Webb says  later that evening" and Johnson say"later on that day" after it had becomes" "night time."

Webb's and Johnson's testimony is also suspicious on the issue of who was present for the conversation. Both witnesses testified that they were in separate rooms from each other as well as from the participants to the conversation.They claimed that "Michelle did most of the taking".They did not testify to having  physically seen anyone enter the defendant's room,nor did they testify to having recognized or even heard any other voices . Given that they were both in separate rooms,the record fails to provide a basis for their testimony as to the participants to the conversation that they overheard.

As to their testimony about the conversations,it must be noted that Webb's and Johnson initial descriptions of the conversations they overheard were both vague and imprecise. Webb said that she overheard"them describe how they killed Aisha" (R.D29) Johnson said that she overheard"them"as"they described to the defendant what happen" (R.D 114).

Where the states evidence really falls short,however,is with the authentication of the oral statements that Webb and Johnson attribute to the non- testifying co-defendant Michelle Clopton.

As noted above ,neither Webb nor Johnson was able to provide a specific time as to when the conversation that they overheard actually occurred. Most importantly,however,neither Webb's nor Johnson's testimony was sufficient to satisfy the familiarity requirement contained in the for authention of oral statements.

(15)

At no time during the examination of either Webb or Johnson did either of them testify that they were familiary with Michelle Clopton's voice, the basis of the familiarity with her voice, or that based on the familiarity with Clopton's voice they able to identify the voice they overheard as the voice belonging to Michelle Clopton.

Clearly, the elements of the foundation necessary to authenticate the oral statements that Webb and Johnson overheard were not established, There fore, because the proper foundation was not made, the statements that Webb and Johnson attributed to Michelle Clopton should not have been admitted into evidence.

Although no foundation Objection was made at trial and the issue was not included in the defendant's motion for new trial this court should grant review of the issue under the plain error doctrine.

The plain error doctrine allows a reviewing court to consider a trial error not properly preserved when (1) the evidence in a criminal case is closely balanced or (2) the error is so fundamental and of such magnitude that the defendant was denied his right to a fair trial.

Not only is the evidence closely balance in this case, given the deficiencies in the state's evidence and the lack of credibility of its witnesses, but the error in allowing Webb and Johnson to testify about state-ments they overheard and attributed to the non-testifying co-defendant Michelle Clopton without requiring a complete and proper foundation is so fundamental and of such a magnitude that it denied the defendant a fair trial. Without this evidence, the State would have been unable to prove several essential elements of its prosecution; specifically, the State would not have been able to prove the "another and the "conduct' for whom and for the state alleged that the defendant was accountable.

(16)

petitioner asserts based on the facts that the trial court abused its discretion by allowing the states witnesses to attribute statements to petitioners non-testifying co-defendant Michelle Clopton into evidencewith without the proper foundation being first layed,violated the petitioners U.S Constitutional rights to due process under the 14th amendment,Also the petitioner asserts his U.S Constitutional rights were violated under the 6th amendment rights to directly confront adverse witnesses and directly crossexamine them, "Michelle Clopton" was not testifying,so the statements attributed to "Michelle Clopton"could notcbescrossexamined .

**(D)** Ground four,additional pages.

The admission of evidence is within the sound discretion of thès trial court and its ruling should not be reversed absent aclear showing of abuse of that discretion.

Hearsay is defined as "testimony of an out-of-court statement offered to established the truth of the matter asserted therein,and resting of its value upon the credibility of the out-of court asserter.

The reason for excluding such evidence is found in the last phrase of the definition stated above."(A)nd resting for its value upon the credibility of the out-of court asserter".The basis for excluding evidence under the hearsay rule lies in the fact that an opportunity to acertain the veracity of the testimony is absent...The essential requirement of the testimonial offering is the opportunity for crossexamination of the party whose assertions are offered to prove the truth of the fact asserted".

The statements attribued to the non-testifying co-defendant Michelle Clopton were,indeed,made out-of-court.

Further ,there is no doubt that the statements,as overheard by Webb and Johnson ,were offered to establish the truth of what they assert,i.e, that Michelle Clopton,John knight, Ebony Reynolds,and Kimberly Head killed Aisha (Dora Cobb) by beating her with a stick and then shooting her in the head.

Because these statements were hearsay,the court abused its discretion allowing them in to evidence.

Prior to trial,the defendant's trial counsel objected to the evidence of these statements.(R.A4) In the motion for new trial,the defendant,throu -gh trial counsel,argued that he had been denied a fair trial.(C.42)

In the event that this court determines that the error has not been properly preserved,this court should review the error under the plain error doctrine. The plain error doctrine allows a reviewing court to consider a trial error not properly preserved when (1) the evidence in a criminal case is closely balanced or (2) the error is so fundamental and of such magnit ude that the defendant was denied his right to a fair trial.

Not only is the evidence closely balanced in this case ,given the deficiencies in the states evidence and lack of credibility of its wit- nesses,but the error in allowing these hearsay statements into evidence denied the defendant a fair trial. without this evidence,the state would have been unable to prove several essential elements of its prosecution; specifically,the state would not have been able to prove the"another" and the"conduct " for whom and for what the state alleged that the defendant was accountable .

The propriety of plain error review of this issue is ,Where the hearsay evidence ,as here is the only evidence as to an essential element of the state's case, Some courts have held that,We think that its admission cannot fail to constitute reversible error as a violation of the defendants

sixth admendment right,even if there has been no objection in the trial court to admission of the hearsay.

Petitioner asserts that it was an abuse of discretion to admitt the statements attributed to the non-testfying Co-defendant Michelle Clopton Where those statements amounted to harsay.Petitioner asserts that all the above issues are the reason his U.S. Constitutional rights were violated under due process of the 14th amendment and U.S Constitution rights to Confrontation under the 6th amendment rights to directly crossexamine advers -e witnesses..

(E) Ground five and additional pages;

It was an abuse of discretion to admitt the statements attributed to the non-testifying Co-defendant Michelle Clopton where the co-conspirator exception to the hearsay rule did not apply.Petitioner asserts that the ab-use of discretion prejudice the petitioner violating his U.S.Constitutional rights ,under the dae process clause of the 14th,Also violating his U,S. Constitutional rights under the confrontation clause,rights of the 6th amend

The admission of evidence is within the sound discretion of the trial court and its ruling should not be reversed absent a clear showing of abuse of that discretion.

The state charged the defendant,John Knight,Ebony Reynolds,Kimberly Head and Michelle Clopton with the offense of conspiracy to commit first degree murder.(C17) Specifically,the state alleged that "they" with intent to commit first degree murder and committed an act in furtherance of the agreement,to wit; they lured Dora Cobb into a car and transported her to the forest preserve and then lured her in the forest preserves.(C 17).

(19)

Under the co-conspirator exception to the hearsay rule.any act or decla-
ration by a non-testifing co-conspirator of a party commited in furtherance
of the conspiracy and during its pendency is admissible against each and
every conspirator,provided that a foundation for its reception is laid by
independent proof of conspiracy.

A prima facie case of conspiracy must show that two or more persons
were engaged in a common plan to accomplish a criminal goal or to reach a
common end by criminal means, and that act or acts were done by one or more
of them in furtherance of the conspiracy.

The general rule is that a statement of one co-conspirator is admissible
against the others as an admission only if the statement was made during the
course of and in furhterance of the conspiracy.Statements made in further-
ance of a conspiracy are those which had the effect of advising,encouraging
,aiding or abetting it perpetration.

A statement which is merely a narrative of past occurences will not fall
within the co-conspirator exception since it does not further any objective
of the conspiracy. Once the primary goal of the conspiracy is completed,any
such concealment ,cannot serve as a basis to admit statements of a defendant
's former co-conspirators.

The state's evidence didnot establish a prima facie case of conspiracy.
for reasons discussed above,the state's witnesses were not credible and t
their testimony cannot serve as the basis for finding that there existed a
conspiracy to commit first degree murder of Dora Cobb.

Further,none of thier testimony,even if believed,proved that the def
endant Specifically agreed with Clopton and/or JohnKnight and/or Ebony Rey
nolds and /or kimberly Head to murder Dora Cobbs.

Also of significance,however,is the fact that the statements overheard
by Webb and Johnson and attributed to the non-testifying Co-defendant Mich-
elle Clopton were not made during and in furtherance of a conspiracy to
murder Dora Cobb.

(20)

The statements overheard by Webb and Johnson and attributed to Michelle Clopton neither advised,encouraged,aided nor abetted in the commission of the murder,they were nothing more than"a narrative of past occurrences".

Further ,because the statements overheard by Webb and Johnson and attributed to Michelle Clopton,which described how Dora Cobb was killed, were made after Dora Cobbs had been killed,the statements cannot be said to have been made during the pendency of a conspiracy to murder Dora Cobbs. with her murder ,the primary goal of the conspiracy had been accomplished and the conspiracy to murder Dora Cobb ceased to exist.

Because the state did not make a prima facie case for conspiracy and because the statements overheard by Webb and Johnson and attributed to Michelle Clopton would not have been made during and in furtherance of such a conspiracy,it was an abuse of discretion to allow the statements into evidence under the co-conspirator exception to the hearsay rule.

Without the erroneously admitted statements overheard by Kalesha Webb and Theresa Johnson and Attributed to Michelle Clopton,no rational trier of fact couldtthave found the defendant accountable for the murder of Dora Cobb beyond a reasonable doubt.

Based on all the issues stated above ,the petitioner asserts that his U.S.Constitutional rights were violated under the due process clause of the 14th amendment,Also His U.S.COnstitutional rights of the 6th amendment rights to confront adverse witnesses ,rights to directly cross-examine the witnesses.

(21)

(F) <u>Ground six and additional pages;</u>

It was an abuse of discretion for the trial court to allow the state to present evidence of the defendants drug related activity as motive evidence.Petitioner asserts that this abuse of discretion prejudiced the petitioner by violating his U.S.Constitutional rights,under the due process clause of the 14th amendment.Also by violating his U.S. Constitutional rights  under the 6th amendment.

The admission of evidence is within the sound discretion of the trial court ruling should not be reversed absent a clear showing of abuse of that discretion. Although evidence of other crime activity of the defen dant is generally in admissible,such evidence may be admitted where it is offered to prove the defendants motive to commit the offense for which he is being tried.

Before such evidence may be admitted,however.the State must first show that the crime took place and that the defendant committed it or participated in its commission.

though proof need not be beyond a reasonable doubt,it must be more than a mere suspicion. when such evidence is offered,the trial judge must weigh the relevance of the evidence to establish the purpose for which it is offered against the prejudicial effect the introduction of such evidence may have upon the defendant.

Before trial ,the state expressed its motive theory and its reason for wanting to offer evidence of the defendants drug related activities: (E)vidence of the defendants drug related activity and his belief that'... "Dora Cobb" was providing information to the police regarding his drug operation" established that the defendant had a motive to have Dora Cobb killed. (C40,R,C4)

(22)

The drug related activity evidence that the state chose to present in order to bolster its motive theory was that the defendant ran a drug opera tion out of two buildings (R.D97,D100,D103,E5,E10): that all three of the states's witnesses sold drugs for the defendnat (R.D37,D97,E7,E8): and that the defendant made a profit from the drug operation (R.D99,E8,E9). The only problem with the state's theory was that its evidence just did not bear it out. Sure it may have or may not have proved that the wasinvolved in drug related activities',but what it did not prove was that the defendant actu- ally suspected or had reason to suspect that Dora Cobb was giving infor- mation to police that his drug business was suffering.

None of the state's witnesses testified to having actually seen Dora Cobb communicate with the police. While Adonis Head did testify that he had been twice arrested he did not testify that he had been working for the defendant at the time.(R.E14,E16).Head also explained that these arrest were for gun charges and not drugs.(R,E39) No drugs were recovered as a re- sult of either arrest (R.E14,E16)

While Officers Ron Kimble and Michael Jamison testified that they knew Dora Cobb,they did not testify that she had provided any information about the defendant,specifically,or any persons associated with the defend- ant(R.E60) Neither of the Officers testified that as a result of knowing Dora Cobb,they recovered drugs ,guns or money belonging to the defendant or people working for the defendant in his drug operation.Nor was such testim mony presented through Webb,Johnson,or Head.The only admissible evidence pertaining to an arrest other than Head's was Officer kimbles testimony that on March 1,1996 at the 56th and king building,he had arrested a man named joe Hughes for the offense of aggravated battery.(R.E61)No evidence was present to suggest that this man or this arrest was in any way related to the defendant.

(24)

As you can see from the above,the state failed to show how the defendant's drug related activity gave him a motive to have Dora Cobb murdered.But that is not tosay that the evidence did not establish a motive ,for someone ,anyone other than the defendant.to have Dora Cobb murdered.

At trial Adonis Head testified that he knew Dora Cobb.(R.E11) He testified that she livedhencthe baiiding ate56th and king. (E11) This build-ing  was owned by the defendants's father.(R.E69,E70)

Head knew Dora Cobb because the defendant had introduced them.(R.E11) "she was the caretaker of the building'Head told the court."she is the one who collected the rents  the first of the month'.(R.E11) The day that Dora Cobb was shot and killed was the first of the March,1996.When  the police discovered her body  in the forest preserve on March 2,1996.no money was reported to have been found. With Money as a motive ,there would have been an entire building of suspects every tenantffromwwhomsbhe€ooldeteddreent. plus,there would have been ample opportunity.No one would have thought tw-ice about seeing her with another tenant.

Because the drug related activity evidence did not establish a mot ive for the defendant to have Dora Cobb murdered,it was and abuse of dis-cretion for the trial court to allow it to be admitted against the defend-ant and consequently,the defendant was denied a fair trial.

Prior to trial ,the defendant ,through his trial counsel,objected to this evidence.(R.A2)

In his motion for new trial ,the defendant argued that he was denied a fair trial .

In the event that this court determines that the error has not been properly preserved,this court should review the error under the plain error doctrine.

(24)

The plain error doctrine allows a reviewing court to consider a trial not properly preserved when (1)the evidence in a criminal case is so closely balanced or (2) the error is so fundamental and of such magnitude that the defendant was denied his right to a fair trial.

Not only is the evidence closely balanced in this case,given the deficiencies in the state's evidence and the lack of credibility of its witnesses,but the error in allowing such evidence to be admitted against the defendnat prejudices him before the trier of fect and denies him a fair trial .

Based on all the facts and issues mentioned aboved.The petitioner asserts that it was an abuse of discretion by trial court to allow his drug related activity into evidence thereby denieing the petitioner a fair trial and violating hie U.S Constitutional rights to due process under the 14th amendment.

(G) Grounds seven and additional pages:

A Sentence of Natural Life was not authorized by law Where the aggravating factors in 720 ILCS 5/9-1(B) were not shown to be present by accurate reliable and proper evidence.Petitioner asserts that this inaccurate unreliable,improper evidence prejudiced the petitioner by violating his U,S Constitutional rights ,under the due process clause of the 14th amendment.

Where the Sentence chosen by the trial court is within the statuory range permissible for the pertinent criminal offense for which the defendant has been tried and charged,a reviewing court has the power to disturb the sentence only if the trial court abused its discretion in the sentence it imposed.

The reviewing court need not reach the question not reach the quest -tion of abuse of discretion, but may proceed to a reduction of the sentence on appeal,where it is determined that the sentence chosen by the

On October 6,1997 after the defendant had been found accountable for the murder of Dora Cobbthe trial court sentenced the defendant to natural life imprisonment. "I have found that the state has proven beyond reasonble doubt the elements in statue 720,Illinois Compiled Statutes 5,9-1(B),paragraph 5,8,and 11.Predicated upon this,I am sentencing Mr. Johnson to natural life"(R.G27.G10).

730 ILCS 5/5-8-1(a)(1)(b) states in pertinent part; "Except as otherwise provided in the statute defining the offense,a sentence of imprisonment for a felony shall be determinate sentence set by the court under this section, accourding to the following limitations:(1) for first degree murder,..(b)... that any of the aggaravating factors listed in subsection (b)of section 9-1 of the criminal code of 1961 are present,the court may sentence the defendant to a term of natural life imprisonment."

Although a trial judge has wide latitude when receiving evidence at sentencing,"care is to be taken by the trial court in determining whether the information it considers is accurate ,reliable and proper".

The natural life sentence chosen by the court in this case was not authorized by law because the aggravting factors under 9-1(b)(5,8,and 11) were not shown by accurate,reliable and proper evidence to be present,as required by 730 ILCS 5/5-8-1(a).

Section (b)(5) provides that "the defendamt committed the murder pursuant to contract..by which he was to receive money or anything of value for committing the murder or procured another to commit the murder for money or anything of value."

Here the state presented no evidence that the defendant committed the murder of Dora Cobb.

Here the state presented no evidence that the defendant specifically told anyone to kill Dora Cobb.

(26)

The state presented no accurate,reliable,and proper evidence to show who the defendant allegedly procured to commit the murder of Dora Cobb. The only evidence on the issue of who committed the murder of Dora Cobb is Webb's and Johnson's testimony about what they allegedly overheard from their rooms in the evening of March 1996 and for reasons discussed above this evidence was not only without proper foundation but also incredible.

Section (b)(8) provides that the "defendant committed the murder with intent to prevent the murdered individual from testifying in a criminal prosecution orgiving material assistance to the state in any investigation or prosection,either against the defendant or another;or the defendant committed the murder because the murdered indiviual was a witness in any prosecution or gave material assistance to the state in any investigation or prosecution,either against the defendant or another'.

The state presented no evidence that the defendant committed the murder of Dora Cobb.

Further,the state presented no accurate,reliable and proper evidence that Dora Cobb was or was going to be a witness in a criminal prosecution or that she was or had given material assistance to the state in any investigation.

Section (b)(11) provides that "the murder was committed in a cold, calculated and premeditated manner pursuant to a preconceived plan,scheme or design to take a human life by unlawful mean's and the conduct of the defend-ant created a reasonable expectation that the death of a human being would result therefrom.

The state presented no evidence that the defendant committed the murder of Dora Cobb.

Evidence suggesting that the defendant was involved in the murder of Cobb must be disregarded and must not serve as a basis for imposing a sentence of natural life for the following reasons:

(27)

the state presented no well founed or credible evidence as to the identity of the persons who killed Dora Cobb the defendant hadnne motivechol ki996Dora Cobb: people who knew that Dora Cobb was collecting rents on March 1,1996 had a Motive to kill her because she would have been in possession of a large amount of money;and such evidence could originate only with witnesses who for reasons discussed earlier above were not to be believed.

Because the aggravating favtors under 9-1(B)(5,8,and 11)were not shown by accurate,reliable and proper evidence to be present,as require by 730 ILCS 5/5-8-1(a),the natural life sentence chosen by the court in this case was not authorized by law.

Therefore the petitioner respectfully request that this Honorable court enter an modifying and reducing his sentence.

This issue was raised by the oral motion to reconsider sentence made and denied in the trial court on October 6,1997.(R.G28)

It was also raised in the written motion to reduce sentencefile on November 5,1997 and dissmissed by the trialcourt for"lack of jurisdiction' on November 18,1997.(C78,S10).

In the event that this court determines that the error has not been properly preserved,the petitioners request that this court review the error under the plain error doctrine.

the plain error doctrine allows a reviewing court to consider a trial error not properly preserved when (1) the evidence in a criminal case is closely balanced or (2) the error is so fundamental and of such magnitude that the defendant was denied his right to a fair trial.

Not only is the closely balanced in this case,given the deficiencies in the state's evidence and the lack of credibility of its witnesses,but the error in imposing an unautherized sentence of natural life imprisonment is of tremendous and obvious magnitude.The defendant should not be made to die in prison when the law do not so authorize.

(28)

Base on the above facts and issues already stated above,as to the un-authorized sentence of natural life .The petitioner asserts his U.S. Constitutional rights were violated under the due process clause of the 14th amendment.


(H) <u>Grounds eight and additional pages :</u>

A Sentence of Natural life was an abuse of discretion. The petitioner asserts that this abuse of discretion prejudiced the petitioner and violated his Constitutional rights under the due process clause of the 14th amend.


Where the sentence chosen by the trial court is within the statutory range permissible for the pertient criminal offense which the defendant has tried and charged aareviewing court has the power to disturb the sentence only if the trial court abused its discretion in the sentence it imposed.

The defendants 's natural life sentence was an abuse of discretion because it is at odds with the constitutional mandate expressed in Article I,Section 11 of theIllinois Constitution and because it is excessive.

Under Article I,Section of the Illinois Constitution,in determining the sentence that shall be imposed in any given case ,the court must consider not only the seriousness of the offense but also the "objective of restoring the offender to useful citizenship. Ill.Const,art.I.section 11 1970.

When assessing whether a court has abused its discretion as to a sentence  imposed,the sentence must be cosidered for its "illumination of and response to the meaning of the constitutional mandate. Even where the sentence is within the statutory limitations,if the sentence is greatly at variance with the purpose and spirit of the law,then an abuse of discretion may be found.

(29)

The purpose and spirit of the law were not given their due in this case.There is nothing about the defendants life sentence that will assist in restoring him to useful citizenship.

At the time of sentencing ,the defendant was thirty five years old. (53) He had never completed his senior at Englewood high,but since dropping out in approximately 1978,he had studied and obtained a high school equivalency certificate.C48) Additionally,he has earned several college credits.(C48).

In 1979,the defendant entered the united States Marine Corps. (C50). After only a year,however ,he received a general discharge under honorable conditions.

At the time of his arrest in this case the defendant had been in a committed realtionship with Elaine Williams. (C47) They shared a home.(C47)

The defendant is the father to three children.(C48) At the time of sentencing their ages were 3 ,7,17,and although one of the kids lived with his mother in Houston,the defendant stayed close to all of his kids(C48)

The defendant was also close to his father,who had not only employed defendant from time to time over the years,but had been the primary care:- taker for the defendant and his seven siblings since 1969. (C47,C49) . On October 1969,when the defendant was eight years old,his mother died. (C47)

The excessiveness of the defendants sentence when compared to the sentences in other cases on similar facts only serves to emphasize how far from the purpose and spirit of the law the trial court had wandered when it sentenced the defendant to life in prison.

However the petitioner is not allowed to cite case as a part of this petition to prove a point but for the sake proving great variance and the pose spirit of law the petitioner respectfully ask this court to accept this information as to variance just to prove his point.

(30)

Also the defendant was found accountable for the murder of Dora
Cobb, It was never alleged that the defendant personally murdered her or
that the defendant was even present at the time of the murder. It was
alleged that the defendant paid someone else to murder her.

For variance information in comparision but not directly pertaining
to the petitioner in this case. (1) Where a defendant along with two other
persons planned an armed robbery and murder of the defendant's former em-
ployer,the court sentenced the defendat to 40 years on the murder and 30
years on the armed robbery.

(2) Also where a defendant and a fellow gang member,while staking out
rival gang members in effort to seek  revenge for an earlier skirmish spra-
yed gunfire into a large group of indiviuals killing a 14 year old boy,the
courts sentenced the defendant to 39 years in prisonment.(3) Also where a
defendant directed his gangs "chief enforcer" to shoot to death one man and
tryed to shoot another ,the courts sentenced the defendant to 35 years
imprisonment.

Contrary to the message being sent by the defendants natural life
sentence,the defendant is no lost cause nor should he be treated like one
given the sentence imposed on similar facts in other cases information
above.

The defendant has shown that he has the ability to involve himself
in pursuits that can benefit and enrich the community which is what lies
at the heart of useful citizenship. Over the years of his life ,he involved
himself in education. He has involved himself in the service to his country
and he has involved himself in being part of starting a family.

Taking all of this into consideration ,it is clear that the defendant
's life sentence was an abuse of diecretion and pursuant to rule 615(b)(1)
and (4),the defendant requests that this court modify and reduce his sent-
ence.

This issue was raised by the oral motion to reconsider sentence made and denied in the trial court on October 6,1997 (R.G28)

It was also raised in the written motion to reduce sentence filed on November 5,1997 and dismissed by the trial court for a lack of jurisdiction on November 18 1997.(C78,S10).

In the event that this court determines that the error has not been properly preserved ,this court should review the error under the plain error doctrine.

The plain error doctrine allows a reviewing court to consider a trial error not properly preserved when (1) the evidence in a criminal case is closely balanced or (2)the error is so fundamental and of such magnitude that the defendant was denied his right to a fair trial.

Not only is the evidence closely balanced in this case,given the deficiencies in the states evidence and the lack of credibility of its witnesses,but the error in imposing a sentence of natural life imprisonment is of tremendous and obvious magnitude.

Base on the above facts and issues already stated above in grounds eight. Petitioner asserts his U.Constitutional rights were violated under the due process clause of the 14th amendment.

   (I)Ground nine and additional pages:

The trial court had jurisdiction to hear and decide the defendants motion to reduce Sentence.The petitioner asserts that the trial courts failure to hear and decide the petitioners motion to reduce Sentence pre-judiced the petitioner by violating his Constitutional rights under the due clause of the 14th amendment.

On October 6,1997,the trial court sentenced the defendant to natural life imprisonment. (R.G27)

(32)

Also on October 6,1997,the defendnat's trial counsel made an oral motion to reconsider sentence.(R.G28).The trial court denied the motion. (R.G29).

Defendant's trial counsel then filed a notice of appeal.(C70).

On November 5,1997,the defendant,through his appellate counsel,filed a written motion to reduce sentence.(C78). On November 18,1997,the defendant 's appellate counsel appeared before the trial court in connection with the motion to reduce sentence.(S!-S13).The trial court told counsel that it lack -ed jurisdition to hear the motion." The notice of appeal was filed on Oct -ober 6,1997. I find that I have no jurisdition. Leave to file is denied based on the fact of lack of jurisdiction.( S10)

The filing of the notice of appeal on October 6,1997 did not deprive the trialcourt of jurisdiction to hear the defendant's motion to reduce sentence which was timely filed on November 5,1997.

Ordinarily,the filing of a notice of appeal divests the trial court of jurisdiction to enter any order involving a matter of substance and causes the jurisdiction of the appellate court to attach instanter.

How ever,courts have held that the timely filing of a post-sentencing motion within 30 days of the judgement acts as an implicit motion to dissmiss the notice of appeal and renders the notice of appeal ineffectual.

The mourts have ruled that the trial courts had jurisdiction to rule on a defendants  motion to reduce sentences which was timely filed even though the notice of appeal had already been filed."We hold that the filing of the post-sentenceng motion was an implicit motion to dissmiss appeal pursuant to Rule 309.'

The proper filing of such a motion not only negates the effect of the notice of appeal and revests the trial court with jurisdiction,but it also tolls the running of time for appeal until the trial court properly rules on the motion 730ILCS 5/5-8-1(C).

(33)

Here, the defendant's written motion to reduce sentence was timely filed within 30 days of sentence being imposed. The trial court had juris diction todecide the motion and should have decided the motion .

Based on the facts and issues above already stated the petitioner asserts that his US Constitutional rights were violated under the due pro-cess clause of the 14th amendment.

### (J) Grounds Ten and additional pages

The petitioner was denied the effective assistance of counsel.The petitioner asserts that he was denied his rights to effective assistance of counsel because his counsel failed to to object before trial and during tr ial to the testimony of Theresa Johnson and Kalesha Webb as to the state-ments they overheard and attributed those statements to the non-testifying co-defendant Michelle Clopton on the grounds that the proper foundation for those conversations and the proper foundation for oral statements had nog been made.The petitioner asserts his U.S Constitutional rights were violat-ed under the 6th amendment right to effective assistance of counsel and his 6th amendment right to confront and crossexamine adverse witnesses.

In order to receive a new trial based on the allegations of ineffect-ive assistance on trial counsel,a defendant must satisfy the two-prong test enunciated by the United States Supreme Court and adopted by the Illinois Supreme Court.

The defendant must show that his attorney's performance fell below an objective standard of reasonableness .In addition,the defendant must prove that,but for the incompetence of his attorney the outcome of the def -endant's trial would have been different.

(34)

The defendant was denied the effective assistance of counsel because his trial counsel did not object to Kalesha Webb's and Theresa Johnson's testimony as to the statements that they allegedly overheard and attributed to the non-testifying co-defendant Michelle Clopton on grounds that the proper foundation for a conversation and the proper foundation for oral statements had not been made.

The reason that this evidence was erroneously admitted is discussed above in my argument (C) Ground three.

Because the proper foundation was not made,trial counsel performing at an objective standard of reasonableness would have objected to the ad-mission of the statements into evidence.

That the outcome of the proceeding "would probably have been differ ent if counsel had objected to Webb's and Johnson's testimony is best seen in the fact that without their testimony as to the statements they claim to have overheard,the State would have been unable to prove serveral essent ial elements of its prosection,specifically.the State would not been able to prove the"another" and the "conduct" for whom and for what the State alleged that the defendant was accountable. Finding the defendant account able for the murder of Dora Cobb would not have been possible


Based on the  facts and issues stated above the petitioner asserts his U.S.Constitutional rights were violated under the due process clause of 14th amendment,and his U.S.Constitutional rights were violated under the 6th amendment ,right to have effective assistance of consel,and the righttto confront adverse witnesses,and the right to crossexamine adverse witnesses and their testimonal evidence.

Also ,although all three of the witnesses' provided testimony at trial
which implicated the petitioner in the planning of Cobb's murder,none of the
witnesses came forward with the information during the initial police invest
igation.Both Webb's and Adonis waited well over two months before giving
statements to the police ,and their statements gave no account of the detail
-s of the murder or of the petitioner's involvement therein.(R.D49-D52,E48).
Johnson also waited over two months before reporting any information to the
police.(R.D122-D123). Her statement was inconsistent with her testimony on
several points namely: the extent of her drug dealings for the petitioner
and the extent of her personal familiarity with the victim.(R.D126,D130).
Finally ,Adonis acknowledged that,at the time of trial,he was incarcerated
and awaiting the resolution of a charge against him for delivery of a con-
trolled substance.Although he maintained that he was not given any promises
in exchange for his testimony, Adonis noted that the State had agreed to
mention his truthful testimony at the petitioner's trial to the judge pre-
siding over his delivery case at the time of Adonis sentencing. (R.E4-E6).

In mid-February,1996,the police raided an apartment building located
at 5636 south King Drive,and Adonis and leroy wilson the father of Webb's
children,were arrested.(R D32,E12).Adonis was in jail for one day where the
petitioner allegedly provided him with a lawyer.(R.E15).After he was releas
-ed,Adonis attended a meeting with petitioner at which Michelle and Raynard
Clopton,Webb's and Theresa Johnson were also present. According to Adonis,
the petitioner said that he wanted to find out who the snitch was and some-
one elseat the meeting mentioned that it might have been Cobb.(R.E15-E16).
Webb's testified that this was the first time she had met the petitioner.
(R.D5).According to her ,at that meeting,the petitioner offered to provide
Leyroy Wilson with lawyer,which he eventually did.(R.D9).Webb's further
testified that .at the same meeting,Michelle Clopton announced that she
believed that Dora Cobb was responsible for Leroy Wilson arrest.(R.D14).

The petitioner responded,bont worry about it.We will

do something about it".(R.D15).Although Adonis and Webb's testified that she was present at the meeting,theresa Johnson did not reference it during her testimony.

About one week later,Webb's had dinner with Michelle Clopton and Ebony Reynolds. At dinner,Clopton stated that they were going to have to "get somebody to take care of Cobb.According to Webb's,the petitioner replied,We might have to do that.We will just take her out to breakfast" (R.D15).

Adonis was arrested once more on February 26,1996,and petitioner again allegedly bonded him otu and provided him with counsel.(R.E16) Adonis and Michelle ,and the petitioner discussed whether Cobb was the snitch.(R.E17). A couple of days later,Adonis went out to breakfast with the petitioner and Michelle Clopton.There.Michelle stated her belief that Cobb was the snitch, and the petitioner said that he wanted the group to keep treating her like she's part of the family"and"let her skin her own skin.(R.E18).On February 29,1996,the petitioner asked  Adonis if he knew anybody who would "do a hit" for $1,000 and Adonis told him to ask Michelle Clopton.(R.E20).

On the morning of March 1,1996,at an apartment building at 55th and Union,where the petitioner lived,Adonis met with Michelle and the petitioner .Michelle suggested Ebony Reynolds and John Knight for the hit.Accompanied by Webb's,Adonis picked up Reynolds and knight,and the group drove to 5636 south king Drive. (R.E21).They saw Theresa Johnson waving a hand at them through a window,indicating that police was present.(R.E22).Adonis Claimed that Johnson was standing in s second floor window,but Johnson recalled wav -ing from the third floor.(R.D135,E43). Adonis,Reynolds,and knight declined to enter the building and drove over to 55th and union instead.(R,D22,D25). Theresa Johnson and Michelle Clopton walked from 5636 south King Drive to 55th and Union where they joined the rest of the group and the petitioner in the building's office.(RD22,D107).According to Johnson,Raynad Clopton and Kimberly Head were also present for this meeting.(R.D108).

Before considering all the evidence presented from Grounds(1)thru (12) for the last two issues eleven and twelve the petitioner cant help but think that in order to get the full understanding of the issues one would have to present a small alleged statement of facts on some of the trial proceedings. Petitioner ask that this Honorable court please bear with him.

On the day of trial the parties alerted the court to what they both perceived to be a conflict of interest on the part of defense counsel.The State informed the court that defense counsel had represented a key witness, Adonis Head ,an admitted drug dealer working for the defendant, for a drug case which the witness picked up after Johnson had been arrested for the murder of Dora Cobb. The prosecutor further informed the court that defense counsel had represented Head on "one or two prior occasions" as well.(R.B4). Defense counsel admitted that he had represented Head for two cases in the past and informed the court that he had withdrawn from his representation of Head in his most recent case.He also maintained that he had informed the petitioner of the conflict and of his right to obtain new counsel.(R.B5). After asking the petitioner to look into (his) heart" and determining that the petitioner "felt good"about his trial counsel,the trial court declared that there was no conflict.(R.B7).The petitioner then made an oral waiver of any potential conflict.(R.B8).The matter then proceeded to trial.

The state offered the testimony of three witnesses,Kalesha Webb, Theresa Johnson,and Adonis Head,all of whom were with the petitioner before and after Cobb's body was discovered, but none of whom had witnessed the killing. All three were admitted drug dealers who allegedly worked for the petitioner.(R.D36-D37,D98.E6).After initially denying any drug use,both Webb and Johnson testified that they smokee marijuana.(R.D48,D123).Trial counsel never asked Adonis Head about his drug use.

(38)

There were some discrepancies as to what transpired in the office.
All three witnesses recalled seeing the petitoner with a gun wrapped in a
towel.According to Webbs and Johnson,the petitioner handed the gun to Mich-
elle.(R.D25D110).According  to Adonis,the petitoner placed it on the table
,Michelle picked it up.(R.E24). All three testified that Michelle gave the
gun to Knight.(R.D36,D110,E24).Johnson testified that the gun was silver
while Adonis maintained that it was black (R.D112,E46).Webb's initially
testified that the petitioner "didnt say nothing about no gun;when he passed
the towel-covered weapon to Michelle Clopton but she later changed her test
-imony,maintaining that the petioner actually exclaimed "I have a gun in
the towel'as he handed it over.(R.D46). All three witnesses testified that,
while the group was in the office,Michelle explained that the police had
visited the apartment building at 5636 south king earlier that day,and that
Cobb had "pointed Michelle out as a drug dealer (R.D25,D43,D109,E23).Accord
ing to Webb's Michelle told the group that they ahd to take care of Cobb.
(R,D25).Johnson initially testified that the petitoner made no comments
during this meeting .(R.D110).Webb testified that the petitioner stated, we
are going to do this .According to Webb's the petitioner then asked the
group if they were ready and told them not to mess up or "leave anything
and to make sure  that nobody saw them leaving 5636 south King.(R D26) Acc
ording to Adonis ,the petitioners only remark during the office meeting was
that the group was going to have to take care of her."(R.E23),

Both Johnson and Adonis testified that a second meeting took place
upstairs in the same building.According to Adonis it eas this meeting not
meeting in the office,that the group was joined by Raynard Clopton and kim
berly Head.(R.E25).According to Adonis at this meeting ,the petitioner said
that he wanted the group to"take her out to lunch"and make sure it was her
last meal(R.E25. The petitioner  also told the group to get rid of the gun
and warned them not to mess up.

(39)

Finally,he told them that" if they did a good job " they would get a bonus',(R.E26). According to Johnson ,while the group was upstairs,the petitioner told someone in the room to "take the bitch out to breakfast"a phrase which Johnson had heard many times before and which she understood to mean that he wanted her killed.The petitioner also said that Cobb was making him lose money in his empire" (R.D110-D111).Johnson testified that the petitioner then handed another gun,which he retrieved from under his bed,to Michelle,who in turn gave it to knight. (R.D111).Later,Johnson chan ged her testimony, maintaining that the petitioner actually made these commenta at the office meeting ,not at the meeting upstairs.(R.D117-D118).

Michelle Clopton,John Knight,Kimberly Head,Ebony Reynolds left the building at 55th a nd Union,while Webb's,Johnson and Adonis stayed.(R.D28, D113,E26) According to Adonis he and Webb went to Hyde Park.(R. E26) John- son behind and slept.(R D114).Adonis and Webb returned later that night af- after Michelle paged him multiple times.(R.26) Michelle,Knight,Reynolds,and Kimberly returned and gathered with the petitioner in his room on the third floor of the building at 55th and Union and held another meeting.(R.D28,E29 ).Johnson initially testified that she was listening from her own room lo- cated next to the petitioners (R.D114).However ,she later testified that she was present in the petitioners room for the meeting.(R.D145).Both Webb and Johnson heard Michelle describe Cobb's Murder to the restof the group. Michelle said the group was walking through the forest with Cobb when Rey nolds hit her in the head with a stick,knocking her down. Knight then shot her multiple times in the head.(R.D29,D115.) According to Webbs and Johnson the petitioner then asked the group if they were sure that Cobb was dead. (R.D30,D116).Webbs testified that the petitioner responded, I wont believe it until I see it.(R.D30).Johnson testified that the petitioner responded, that he wouldnt pay the group until he saw it on the news.(R.D116).Both Johnson and Adonis recalled hearing the group sing ding ding dong the witch is dead (R.D116,E28).

At some point that evening the petitioner told Adonis that "miss P was gone ,Michelle told him they had to get rid of  her.Adonis asked who miss miss p was ,and the petitioner replied dont worry about it now' (R.E28). According to adonis ,the petitioner further remarked,my boy's did a good job if I hear it on the radio,they will deserve a bonus." Adonis took Reynolds and knight home later that night.(R E.28).

The next day the petitioner told Adonis to go get Reynolds and Knight so that he could pay them a bonus,which he decided they deserved after he 'seen it on television.(R E29).Whem they arrived the petitioner gave Reynold s and knight some money,told them that they did a good job,and remarked,you all keep op doing gdod jobs and I'll have to hire you for all my little personals" (R.E30). Johnson also recalled seeing the petitoner pay Reynolds and Knight on March 2.(R.D117). According to Adonis ,the petitioner told everyone to keep it in the family,which he understood as a warning not to tell anybody outside of the group what had happen.(R.E34).Months later,after Johnson gave a statement to police ,Michelle ,Knight,Reynold and Kimberly were arrested (R.E30).

The state offered some additional evidence regarding the alleged drug business of the peititioners,the death  of Cobb,and the petitioners arrest. officer Ronald Kimble testified that on February 19,after speaking to Dora Cobb he arrested a Leyroy Wilson and Adonis Head .(R.E62) Officer Michael Jamison testified that he had been given numerous tips by Cobb which led to drug arrest in the petitioner building.(R.D82-D92).Owen Boehm,who lives about 150 feet from the Dan Ryan Woods heard several loud "bangs" while in the bedroom of his house around  9;00pm March 1,996. (R.C17-C20) An off-duty police officer,Jaime Mendez,found the body of Dora Cobb in the Dan Ryan Woods on March 2,1996. (R.C23). Doctor Edmund Donoghue,who performed the autopsy,determine that Cobb died as a result of gunshot wounds to the head.

(41)

(K) Ground eleven and additional pages ;

Petitioner's Post Conviction petition makes a substantial showing that his trial counsel's representation was ineffective where he proceeded to represent the petitioner in spite of his representation of a key State witness and neither he nor the trial court fully informed the petitioner of the potential effects of the conflict before the trial court accepted the petitioner's waiver of conflict -free counsel.The petitioner asserts that because of this conflict between him and his counsel. The petitioner asserts that his U.S.Constitutional rights under the 6th amendment were violated. Also his U.S.Constitutional rights under the due process clause of the 14th amendment were violated.

On the first day of trial,the State informed the trial court of a situation which both parties agreed constiuted a conflict of interest on the part of petitioner's trial counsel Dennis Sherman.The prosecutor informed the court that Sherman had represented a key State witness, Adonis Head,on numerous previous occasions.Sherman explained that he had represented Adonis for an offense which was still pending and on two proir occasion.Trial coun- sel had withdrawn from his representation of Adonis on the most reeent matter -er prior to the day on which the petitioner's trial begaan. The court accep -ted the petitioner's waiver of his right to conflict-free counsel.In his post-conviction petition,the petitioner maintains that trial counsel was in- effective for convincing the petitioner to make this waiver where the petit- ioner was not informed that Adonis's testimony would directly implicate the petitioner and where Adonis had previously given a statesment to the police in which he made no mention of the petitioner's alleged involvement.With no explanation,the trial court granted the State's motion to dismiss this claim (R.RR3-RR20).

(42)

The petitioner asserts and respectfully request that this Honorable
court remand this case for an evidentiary hearing because the petitioner
has made a substantial showing that his waiver of conflict -free counsel was
not made knowingly.

Because the appeal arises from a claim dismissed at the second stage
of the post-conviction process,the petitioner asserts that de,novo review is
required. The petitioner also asserts that as a preliminary matter,the part
ies were correct in their combined assertion that,where trial counsel was
representing the petitoner, he was doing so in spite of a conflict of inter-
est.(R.B5). Where defense counsel has represented a State's witness, aper,se
conflict of interest exists if the professional relationship between the
attorney and the witness is contemporaneous with counsel's representaion of
the defendant .Petitioner asserts "When such a conflict exists,prejudice is
presumed. And this is such a case..

Dennis Sherman represented both clients at the same time immediately
prior to trial. He filed an appearance on behalf of the petitioner on August
19,1996 (C.2).He represented Adonis on a related charge for which he was
arrested in January of 1997,just months before the petitioner's trial in
August of 1997.(R.B5).Thus,he represented the petitioner for at least five
months prior to signing on as counsel for Adonis,and,for a time represented
Adonis and the petitioner contemporaneously.Trial counsel would undoubtedly
have begun some sort of preparation for the petitioner's trial by that time.
While he represented both clients,he would have been torn between conflict-
ing loyalties.

Petitioner asserts furthermore,Adonis testified that he did not tell
the police about the petitioner's involvement in the murder until sometime
in 1997,despite having given a statement in May of 1996.(R.E48)..When he
finally decided to implicate the petitioner in the murder,Adonis was out on
a Sheriff's bond for the very same offense for which Sherman had represented
him while contemporaneously representing the petitoner. (R.E48).

(43)

Also,Adonis testified that he was still awaiting sentencing for this
charge at the time of the petitioner's trial. The State acknowledged that it
promised to 'tell the judge presiding over adonis's case about Adonis's
testimony against the petitioner at the time of Adonis'sentencing.(R.E4),.

Petitioner asserts while it is unclear whether trial counsel was still
representing Adonistat the time the State made this promise,there  is not
doubt that he was representing the petitoner throughout his representetion
of Adonis,and the competing loyalties which necessarily arose out of counsel
's contemporaneous representation of Adonis and the petitioner while Adonis
interests lay in making a deal with the State any way he could ,by testifing
against the petitioner.

Moreover ,the relationship between Adonis,trialcounsel,and the peti
-tioner  was a conplex one ,and consel's previous representations of Adonis
were not necessarily "unrelated" to the petitoner's representation.Adonis
claimed to be a drug dealer working for the petitioner.

Trial counsel represented Adonis on a drug case which he"picked up"
in January of 1997.(R.B4). Adonis's rap sheet indicates that he was charged
with only one case in 1997. see exhibit ___(A)____. Adonis testified that
he informed the police about the petitioner's involvement in the murder
1997 while he was out on  a Sheriff's bond.(R.48).Thus,Adonis must have
been out on bond and likely still represented by the petitioner's trial
counsel for the month of January 1997,drug case  when he first became a
State witness against the petitioner. To the extent that the record  is
unclear  regarding the timeing of trial counsel'representation of Adonis
,the petitioner should not be faulted  for ffäilure to provide supporting
affidavits to clarify this issue,where the only such affidavits would have
had to come from trial counsel himself or from Adonis an adversed witness
who may have been granted leniency in his pending drug case after testify-
ing "truthfully" against the petitioner and who the petitioner did try to
contact repeatedly. (R.CC4).

Because trial counsel represented Adonis on the pick up in January of 1997 which ,according to his rap sheet,was his only charge in 1997,and the petitioner's trial was in August of 1997,Adonis must have been referring to the January,1997,charge when he testified that he was awaiting sentencing at the time of the petitioner's trial.

Trial counsel.a private attorney,represented him on at least two other cases before the most recent drug related offense. In fàct,one of Adonis's arrest allegedly sparked the petitioner's motive for the murder.By the time of the petitioner's trial,trial counsel had established a relationship with Adonis that was interwined with his relationship with petitioner.When Adonis 'turned on ' the petitioner ,counsel would have been especially conflicted with regards to his competing loyalties.He also would have been privy to more extensive confidential information about Adonis than would otherwise be the case if the representation was indeed "unrelated."

In fact,a review of the record yields actual evidence that trial counsel's per-se-conflict of interest resulted in a disadvantage to the petitioner. Counsel,who had previously represented Adonis on drug-related charges,failed to ask Adonis about hie personal drug use despite having already crossexamined the other two key state witnesses about their drug habits.(R.B4.D48,D123,E48,E49). In his affidavit,taken as true for the purposes of this appeal,Raynard Clopton unequivocally stated that Adonis was a heavy crack cocaine user. (C46).Having represented Adonis on drug-related charges contempraneously with petitioner ,charges for which Adonis was still awaiting sentencing,trial counsel would been reluctant to use any confidential information regarding Adonis's drug use during cross-examin-ation at the petitioner's trial,and the record clearly indicates that coun -sel's loyal to Adonis on this point compelled him to alter his cross-examination strategy to the detriment of the petitioner.

(45)

Next ,by asserting in his affidavit that he had no knowledge of what Adonis testimony at trial would be and that he reasonably believed that Adonis'stestimony would be consisent with his earlier statement to police, the petitioner has made a substantial showing that his waiver was not voluntary.Neither the court nor trialcounsel gave the petitioner a suffici -ent explanation of what rights he was giving up when he signed his waiver, Thus, there was a substantial showing that the waiver was ineffective,and the petitioner asks this Honorable courtmandcremandcthisioasenforidanceviident -iary hearing to explore the matter further.  see exhibit___(B)___.

The petitoner asserts that the right to the effective assistance of counsel is a fundamental right and entitles an accused to the undivided loyalty of his counsel. also petitioner asserts this is a right which demand -s indulging every reasonable presumption against its waiver.The petitioner asserts that a defendant must actully understand how a conflict could affect his attorney's representation,before his right to a conflict-free -free attorney can be knowingly waived ,the defendant must be informed of the significance of the possible conflicts so that he might understand how it can effect,even subtlely,his representation.

Here ,the petitioner was not so informed.After the court was informed about the conflict,it described it to the petitioner as follows,"Trial coun -sel might be reluctant to strenuouslt cross-examine Mr Head...but also there is the fact that trial counsel is a professional,and that he has his reputation which he values highly.'(R.B6).The court then asked the petition -er to look into his heart and determine whether he felt good about his trial counsel using his (the petitioner's,not the court's)"legal instincts! After the petitioner responded that he felt good the court  declared that there was no conflict. (R.B7).

(46)

As explained above ,the trial court was applying the in correct stand
-ard. Instead of determining whether the petitioner felt good about his
trial counsel,it should have noted that trial counsel was engaging in the
contemporaneous representation of a key State witness and the petitioner
,and thus a per-se-conflict of interest existed.

Notwithstanding this declaration,the court then accepted the petitioner
'-waiver of any potential conflict and found it to be knowing and voluntary
.(R.B8).

The trial court's admonishments did not amount to an explanation of
how the conflict could affect,evevn subtlely,trialccounsel's representation
of the petitioner . For example,it did not explain to him that trial counsel
might be hesitant to use privileged information during cross-examination,
nor did it explain how the fact that,while he was preparing for the petition
-er's trial,he had simultaneously counseled Adonis about charges for which
Adonis eventually agreed to testify against the petitioner in hopes of
receiving leniency in his sentance. Indeed,the petitioner's affidavit,take
as true for the purposes of this appeal,indicates that he was even unaware
of the fact that Adonis's testimony would be implicating him in the murder
of Dora Cobb.(C45).Although it may seem obvious to those of us with legal
training that where a witness is testifying 'for the state in a trial on
charges against a defendant ,that witness is going to give information about
the defendant's involvement in the crime,where as here the defendant is one
without such training and the witness is a personal friend of the defendant
who initially given a statement to police which in no way implicate the
defendant of wrongdoing,the defendant's assumption that the witness's
testimony would simply corroborate, his earlier statements to police seems
reasonable.

(47)

The petitioner asserts,furthermore,that the petitioner's affidavit demonstrates that trial counsel likewise did not adequately explain the potential effects of the conflict.The petitioner maintains that he was under the assumption that Adonis would be testifying in a manner consistent with his statement to police in which the petitioner was not implicated. (C.45). Had trial counsel thoroughly explained the specific potential effect 's of the conflict,he would have explained that Adonis,as a State's witness would likely be testifying to information that linked the petitioner to the crime.In fact,because trial counsel actually represented Adonis on charges for which he was out on bond when he first implicated the petitioner in a new statement to police,he should have been fully aware of what kind of testimony Adonis would be giving.The affidavit,taken as true for purposes of this appeal,shows that trialcounsel neglated to inform the petitioner of the potential effect of Adonis's testimony.It is true that trial counsel noted for thr record that he did give some sort of explanation to the pet- itioner.(R.B5).However,to the extent that information discussed at this meeting might contradict the assertions which the petitioner made in his affidavit,such information could only have been presented here in the form of an affidavit by trial counsel himself,and the petitioner should not be faulted for the absence of such an affidavit.

The petitioner asserts the State made no response to this issue in its motion to dismiss the petitioner's post-conviction petition.(C78-81) At the hearing on the motion to dismiss,the petitioner's post-conviction counsel summarized the petitioner's claim that his waiver of conflict-free counsel was not made knowingly.(R.RR11). The petitioner asserts although he gave a general responses.

(48)

In conclusion,because neither the trial court nor trial counsel fully informed the petitioner of the effect of his conflict of interest, the petitioner made a substantial showing that he did not knowingly waive his right to conflict -free counsel,The petitioner ask this Honorable court to reverse this case for a new trial or grant the petitioner an evidentiary hearing.

The petitioner asserts that because of the conflict of interest between the petitioner and his trialcconsel.The petitioner asserts that his U.S. Constitutional rights were violated under the 6th Amendment,right to effective assistance of counsel. Also his U.S Constitutional right under due process of the 14th amendment.

(L) Ground twelve and additional pages ;

Petitioner's post-conviction petition made a substatial showing that his trial counsel was ineffective in failing to interview and call as witnesses Raynard Clopton,Leroy Wilson,and Brian Johnson,each of whom would have presented testimony which would have impeached the only witnesses linking the petitioner to the crime.The petitioner aserts that trial counsel failure to interview and call witnesses on his behalf prejudiced the petitioner violated his U.S.Constitutional rights under the 6th Amendment, Also violated his U.S.Constitutional rights under the 14th Amentment,under due process clause.

(49)

In his post -conviction petition,the petitioner maintains that his trial counsel was ineffective in failing to investigate certain witnesses who,if called to testfy,would have offered testimony which would have impeached the testimony of Kalesha Webbs,Theresa Johnson,and Adonis Head, all of whom claimed that the petitioner participated in meeting with Cobb's killers where he stnongly implied that he wanted Cobb dead and that he pro- vided the killers with the murder weapon.Two of these potential witnesses Raynard Clopton and brian Johnson,would have testified that they were pre- sent at the site of the alleged meeting ,but that none of the discussions desciibed by the State's witnesses took place.They also would have provided testimony refuting the State's witnesses claims that Webbs and Theresa were not crack cocaine users. In addition,leroy wilson would have testified to a conversation with Kalesha Webbs in which she denied knowing anything about the petitioner's participation in the murder.Finally Raynard and leroy would have offered testmony regarding  the police department's coercive investigation pnocedures,testimony which would have called into question the reliability of the entire investigation,because the petitioner's petiton with its supporting documents makes a substantial showing that the trial  counsel was ineffective for failure to present available impeachment evidence,this this court should forward the cause for an evidentiary hear- ing.

    The  petitioner asserts because the appeal arises from a claim dismissed at the second stage of the post -conviction process,de novo review is required. also if the allegations and the supporting documents to the post-conviction petition make a substantial showing of a constitutional violation,then the trial court shoüld holdaa evidentiary hearing.Also in determining  whether an evidentiary hearing is required the trial court must take well- pleaded facts ;in the petition and affidavits as true,also generally,an evidentiary hearing should be held when a post-conviction petition presents a questdon of fact.

The petitioner asserts that in order to establish a claim of in effective assistance of counsel, a petitioner must show that counsel's representation of him fell below an objective standard of reasonableness and that counsel's actions resulted in prejudice to the petitioner.The petitioner establishes prejudice by showing that a reasonable probability exists that, but for counsel's unprofessional errors,the result of the proceeding would have been different. also at the second stage of the post-conviction proceed -ing,however the issue is not whether the petitioner has proven an ineffective -ness claim under the analysis.The question is whether,taking the allegations contained in the petition as true,the petitioner has made a substantial show -ing that trial counsel was ineffective.

The petitioner asserts that"Attorneys have an obligation to explore all readily available sources of evidence that might benefit their clients... Failure to conduct investigation and develop a defense has been found to be ineffective assistance. "It has been held that failure to adequately prepare for trial by not conducting an investigation or by failing to interview wit- nesses known to counsel whose testimony may potentially exonerate petitioner can support an inffective assistance of counsel claim. Furthermore,Whether a failure to investigate is incompetence depends upon the eaidenof the evidence and the closeness of the case.

Where  the evidence linking the petitoner to the crime was the inconsistent testimony of three admitted drug dealers who did not witness the murder and heard only ambiguous statements made by petitoner regarding the death of Cobb,the pettitioner' petiton makes a substantial showing that trial counsel's failure to adequately investigate potential exculpatory evidence in the form of testimony  by Raynard Clopton ,Leroy Wilson,and Brian Johnson. constituted ineffective assistance of counsel. see exhibits C,D,E,F,G,

First, Raynard Clopton was willing and able to provide testimony which would have direcely refuted testimony by States witnesses that the petitioner wassinvolved in the meeting during which the murder of Cobb was discussed and which would have otherwise impeached the credibility of the State's three occurrance witnesses. He was furbher willing and able to testify that the police had approached him and attempted to pressure him into testif -iying against the petitioner. Given the significance of testimony regarding the alleged meeting in linking the petitioner to the crime,testimony contra- dicting the witnesses description of the meeting and testimony suggesting that law enforcement officers attempted to coerce testimony against the petitioner would have been particularlt useful to the petitioner and his trial counsel.

All three of the States occuerence witnesses linked the petitioner to the murder only through his alleged participation in meeting with Cobb's alleged killers.By far the most significant of these meeting was the one which took place on the morning of March 1,1996,the day Cobb was killed. Although the witnesses differ significantly as to where the meeting took place who was present ,what was said and who said what,they all gave some account of the petitioner handing a gun wrapped in a towel to either Michelle Clopton or John Knight and commenting in some vague way about "doing this"or "taking care of this". (R.D22-E26).

Both Theresa Johnson  and Adonis Head testified that Raynard was present at this meeting.(R.D108,E27).In his affidavit,Raynard admits that he was present at 55th and union on March 1,1996,where be was helping Brian John son collect rent. He further testified that he was at the building that even ing with Michelle Clopton,where the witnesses agree,with some significant discrepancies,that another gathering took place at which Michelletbldtbbe group how she  Knight,and Reynolds had committed the murder. Raynard clearly states that no statements were made regarding the murder of Cobb and no guns were passed around at anytime during March 1,1996 (R.C46-47)

Thus ,his testimony would have directly refuted that of the State's witnesses,two of whom testified that Raynard was present,and all of whom claim that,on March 1996,the petitioner gave a gun to the killers and strongly implied that he wanted Cobb Killed.

Raynard also might have been able to refute the witnesses accounts of statements made by Michelle Clopton and the petitioner after the alleged murder took place. Had the court ordered an evidentiary hearing on the matter, it could have indentified the extent of Raynard's potential testimony with regards to the various meetings in which the petitioner allegedly participated

Raynard further averred that he had witnessed Webbs,Johnson, and Adonis smoke crack cocaine' many times in the past.(C 46). At trial Webb  and Johnson testified that they smoked marijuana,but denied using other drugs and Adonis testified that Webbs only smoked marijuana,(R.D48,D123,E49) Trial counsel neglected to ask Adonis about his drug use.Not only would Raynard's testimony have offered a direct contradiction to testimony by State's witness -es,it would have constitued impeachment evidence on its own as drug use by a witness has long been held to constitute fertile ground for impeachment.

Furthermore ,Raynard averred that the police had threatened to charge him with the murder of dora Cobb if he refused to give them information about the petitioner'involvement.When Raynard replied that the petitioner was not involved,the police stated that they were not concern with the petitioner's actual guilt with regards to the murder ,but simply wanted to see the petition -er incarcerated because he was a known drug dealer.(C.47) The petitioner asserts that Raynards testimony would have called into question the integrity and reliability of the State's entireinvestigation. The affidavit,which must be taken as true,calls into question the good faith and reliability of all of the evidence obtained and presented agadnst the petitioner.

Lastly ,Raynard's affidavit established that he attempted to approach trial counsel with this information prior to trial,but trial counsel ignored him .(C47).The petitioner himself also alerted trial counsel to Raynard's willingness to testify to no avail.(C44). Trial counsel's failure to follow up on the suggestions of Raynard and the petitioner constuted represe-sentation which fell below professional norms and,where he provided no witness -es to refute the States evidence and the state's case based on the unreliable inconsistent  testimony of the witnesses all of which Raynard would have directly impeached,trial counsel 'failure cannot be considered part of a reasonable trial strategy.

Next ,the petitioner submitted the affidavit of Leroy Wilson whose testimony would have further demonstrated the unreliability of the police investigation and directly impeached the testimony of Kalesha Webbs. Wilson averred that he was arrestd on February 18,1996,and remainedein either jail or prison through march of 1996. Wilson had three conversations with Kalesha Webbs, the mother of his three children,after March 1,1996 and before the petitioner's trial,while he was incarcerated.During the first conversation which occurred over the telephone,Webbs told Wilson that she knew nothing about the murder. During the second conversation which occurred during Webbs visit to Leroy,Webbs reiterated that she had no knowledge of the circumstances surrounding Cobbs death.During the third conversation,which occurred over the telephone,Webbs told Wilson that the police and prosecuting attorneys threaten -ed to charge her with the murder and take her children away if she did not testify falsely against the petitioner.

At trial,Webbs was one of three key witnesses for the state who testified that she saw the petitioner participate in meeting with Michelle Clopton,Reynolds,and Knight where the group discussed Cobb's murder. She also denied that she ever visited Wilson while he was in custody(R.D33)

(54)

Wilson's testimony would have directly impeached that of Webbs in addition to calling into question the good faith and reliability of the entire police investigation.If they attempted to coerce damaging testimony from Webbs,it is likely that they did the same to the State's other witnesses.

Also ,Wilson stated that he never sold drugs or worked security for the petitioner. and that his arrest on February 18 1996 was in no way connected to petitioner or drug sales. At trial Webbs testified that it was Wilson's arrest on February 18,1996 which led to her to the petitioner and first sparked discussion among the petitioner and the killer's about Cobb and her snitching.(R.D5-D14-D15).The State argued that this arrest and other -s like it contributed to the petitioner's motive for wanting Cobb dead.It further argued that the fact that petitioner provided Wilson with a lawyer for his arrest demonstrated his control over his "crew" (R.D10-D13 F5). Wilson's affidavit thus directly refutes the State's argument of motive.

Had trial counsel adequately investigate the events of February 18, 1996,which allegedly precipitated the conspiracy,he would have learned of the involvement of leroy Wilson, contacted him to learn what happen,and made a judgement determine wheather he could provide any useful testimony. His failure to do so constituted representation which fell below professional norms and, where he provided no witnesses to refute the States evidence and the State's case was based on the unreliable,inconsistent testimony of witnesses at least one of which Wilson have directly impeached,trial counsel 's failure cannot be considered part of a reasonable trial Strategy.see. exhibit (E) .

(55)

Finally,the petitioner provided the affidavits of brian Johnson,who would have testified that he too was in the building at 55th and union on March 1,1996,that the office is in fact part of his living area; that no guns were passed around and no statements regarding Cobb's death were made on March 1;1996;and that he had witnessed Theresa Johnson smoke crack co-caine in the past.(C.40-41). Like the testimony of Raynard Clopton,Brian Johnson's testimony would have impeached the three occurrence witnesses on the issue of the petitioner's involvement in the planning of the murder. It also would have impeached Theresa Johnson by providing evidence of her drug use. Both Brian Johnson and the petitioner alerted trial counsel to this potential evidence,but ignored their suggestions.this constituted represent ation which fell below professional norms and where trial counsel provided no witnesses to refute the State's evidence and the State's case was based on the unreliable,inconsistent testimony of witnesses allofvwhdchhBrian Johnson could have directly impeached,trial counsel's failure cannot be considered part of a reasonable trial strategy.

In addition,because the State provided only the inconsistent testimony imony of three unreliable witnesses,the petitioner's petition constitutes a substantial showing of a reasonable probability that,had trial cousel invest igated the three potential defense witnesses and ultimately called them to testify,the testimony would have led to a different result in thecase.The testimony of the three occurrence witnesses was unreliable.All three of the witnesses were with the petitioner before and after Cobb's body was discover -ed,but none of them had witnessed the killing,All three were admitted drug dealers who worked for the petitioner.(R.D36-D37-D98-E6).After initally denying any drug use,both Webb's and Johnson eventually testified that they only smoked marijuana. (R.D48,D123).

Also , although all three of the witnesses provided testimony at
trial which implicated the petitioner in the planning of Cobb's murder,none
of the witnesses came forward with the information during the inital police
investigation. Both Webb's and Adonis waited well over two months before
giviing statements to the police ,and their statements gave no account of
the details on the murder or of the petitioner's involvement therein (R.D49
-D52,E48).Supposedly,they lied during these initial statements because they
were scared of the petitioner.(R.D49-D53,E48).However,this fear did not stop
Webb's from moving into 5636 king drive and beginning work for the petition
-er as a drug dealer after the murder took place.(R.D32,D36,D37.)Johnson
also waited over two months before reporting any information to police.
(R.D122-D123).Her statement was inconsistent with her testimony on several
points;namely ,the extent of her drug dealings for the petitioner and the
extent of her personal familiarity with the victim.(R.D126,D130). Finally
,Adonis acknowledged that,at the time of trial he was incarcerated and await
-ingthe resolution of a charge against him for delivery of acontrolled sub-
stance.Although he maintained that he was not given any promises in exchange
for his testimony.Adonis noted that the state had agreed to mention his
truthful testimony at the petitioner's trial to the judge presiding over his
delivery case at the timeof Adonis's sentencing.(R.E4-E6).

In addition,the stories of the three admitted drug dealers who linked
the petitioner to the murder contradicted each other as to,for example,who
was present at the various meetings leading up to the death of Cobb,what was
said,who said what and even the color of the gun that the petitioner alleged
ly provided and the manner in which he provided it. Their stories also con-
tained internal inconsistencies,evidenced by changes in the witnesses'stori
es throughout their testimony.(R.D22-E26).

Raynard Clopton,Leroy Wilson,and Brian Johnson would have directly refuted the testimony of Theresa,Adonis,and Webbs and thus,the petitioner has made a substantial showing that,had those witnesses testified at trial ,the result of the trial would have been different.

The petitioner asserts that,(A) petitioner need not show that counsel 's defeicient conduct more likely than not altered the outcome in the case ...The result of the proceeding can be rendered unreliable,and hence the proceeding itself unfair,even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome...The petit ioner must show that there is a reasonable probability that,but for counsel 's unprofessional errors,the result of the proceeding would have been diff- erent. The petitioner asserts (A) reasonable probability is a probability is sufficient to undermine confidence in the outcome.

Here,the key witnesses,all of whom were drug dealers who could have faced prosecution for their involvement in the murder and one of whom had unrelated charges pending against him at the of the trial,offered severely inconsistent accounts of the petitioner's involvement in the crime. Their testimony suffered from the kinds of discrepancies which strongly suggest a fabricated story. When viewed in its totality,the State's evidence created only a tenuous link between the petitioner and the crime supported only by out of court statements of parties involved in the offense.The conviction rest solely on the credibility of these three witnesses. Recognizing this fact when finding the petitioner guilty,the trial court remarked," I find that there were inconsistencies in the State's witnesses ,specifically Kalesha Webb,Adonis Head,and also Theresa Johnson ,but overall I find their testimony clear and convincing."(R F28),The petitioner asserts ,even assum ing that the state presented clear and convincing evidence of the petitioner 's guilt,

(58)

The State had to prove the petitioner 'guilty beyond a reasonable doubt,and there is a reasonable probability that this standard would not have been met had the petitioner present the testimony of three witnesses who would have directly refuted the State's witnesses with regards to the pettitoner's alleged participation in meetings leading up to the murder, established the State witnesses as crack cocaine users who lied under oahh about their habit,and raised the possibility that their testimony was the result of threats from the police.

In granting the State's motion to dismiss the petitioner' petition ,the trial court made no specific finding regarding the three potential defense witnesses,stating only that the petitioner "has not shown Substantia lly that his constitutional rights have been violated" and that "neither prong of the Strickland decision has been shown sufficiently",(R RR18-RR19). The State argue that Leroy Wilson's testimony would have been useless beca- use he was incarcerated at the time of the murder and that,because Raynard Clopton and Brian Johnson were drug dealers working for the petitioner,the- ir testimony would have been subject to devastating crossexamination"(R.RR7 -RR8).As explained above ,Wilson could have provided testimony which direct- ly impeached Kalesha Webbs who testified that she didhave first hand know- ledge of the events leading up to Cobb's murder,that she never visited Wilson in jail,and that she did not use crack cocaine. Wilson's testimony also would have impeached Johnson and Adonis as crack smokers who lied about their habit.Finally ,his testimony regarding attempted police coercion would have called into question the reliability of the entire investigation in general and the State's witnessess testimony in particular.Next there was no testimony at trial that any of the proposed defense witnesses were drug dealers.

(59)

Webbs was asked what Wilson did for a living, but the defense successfully objected to the question and the witness's response,and Wilson specifically denied being a drug dealer in his affidavit,(R.D6,D8).If this is important a factor as the State suggested,the State would have been free toquestion each of the potential witnesses on this point had the court grant -ed and evidentiary hearing,Indeed ,the only witnesses thus far established to be engaged in the sale of narcotics,and thus ,by the State's logic,sub- ject to 'devastating cross examination';were the State's witnesses,Kalesha Webbs,Theresa Johnson,and Adonis  Head.

In conclusion,taken as true,the affidavits supplied by the petitoner show that there was available testimony which would have severly impeached the already weak testimony of the State's witnesses.The petitioner made a substantial showing that in failing to make any attempt to investigate these potential witnesses,trialcounsel provided ineffective representation. Thus the petitioner Sherman Johnson,respectully requests that this Court vacate the trial court's dissmissal of his petition and remand for an evidentiary hearing on this issue.

The petitioner asserts that because trial counsel failed to call Leroy Wilson,Brian Johnson and Raynard Clopton to testify at his trial this action prejudice the petitioner and violated his U.S.Constitutional rights under the 6th amendment and his U.S.Constitutional rights of the 14th amendment under due process.

In conclusion to all the issues presented by the petitioner in this petition from ground (1) thru (12) the petitioners ask this Honorable Court to reverse his conviction and sentence and grant him his freedom or reverse and remand this case for a new trial or reduce the sentence or grant him a evidentiary hearing or whatever relief this Court deems appropriate.

*Sherman Johnson* N33009
Menard Correctional Center,P.O.BOX 711
Menard,ILL ,62259

(60)

```
)OCKET (    ) MCASE (    ) ALL CRIMINAL INDEX
SEQ  NAME                 DOB       CASE#         IR#      CB#       FBI#
01 HEAD ADONIS           012774   00CR0496901  1020161  014401082 299413RA4
02 HEAD ADONIS           012774   04128802101  1020161  015954357 000000000
03 HEAD ADONIS           012774   05CR0053201  1020161  016024678 299413RA4
04 HEAD ADONIS           012774   92CR2662301  1020161  9240881   000000000
05 HEAD ADONIS           012773   92CR2891201  1020161  9237770   000000000
06 HEAD ADONIS           000000   92120002901  0000000  9016627   000000000
07 HEAD ADONIS           000000   92133219001  1020161  9237770   000000000
08 HEAD ADONIS           000000   94130644901  0000000  000000000 000000000
09 HEAD ADONIS           000000   96116151201  0000000  000000000 000000000
10 HEAD ADONIS           000000   96121614601  1020161  010162421 000000000
11 HEAD ADONIS           012774   97CR0587901  1020161  010431597 299413RA4
12 HEAD ADONIS R         012774   00111028101  1020161  014401082 000000000
13 HEAD ADONIS R         012774   04200726601  1020161  016024678 000000000
14 HEAD ADONIS R         000000   92141015401  1020161  9240881   000000000
15 HEAD ADONIS R         012774   94500233801  0000000  8601262   000000000
16 HEAD ADONIS R         000000   96110778901  1020161  010166248 000000000
17 HEAD ADONIS R         012774   96115222201  1020161  010385056 000000000
18 HEAD ADONIS R         000000   97111228501  1020161  010431597 000000000
19 HEAD ADONIS R         012774   98136643301  1020161  011166526 000000000

PF3=RETURN; PF7=BKWRD; PF8=FRWD; PF10=LEFT;     PF11=RIGHT; ENTER=CONTINUE
*INVALID PROCESS*
```

A-8

STATE OF ILLINOIS)
                 )    SS                                    EXHIBIT (B)
COUNTY OF RANDOLPH)

## AFFIDAVIT

I, <u>Sherman Johnson</u> ,being first duly sworn upon my oath
depose and state that the following matters are true and correct
and made upon my personal knowledge and belief, and if called to
be a witness, I am competent to testify thereto.


That I <u>Sherman Johnson</u>,spoke to <u>Dennis Sherman</u> in the
bull pen of the cook county jail during pre-trial proceedings
about a conflict interest waiver at that time he explained to me
that he had been representing <u>Adonius Head</u> and that it would be a
conflict of interest if he represented the both of us ,so <u>Dennis
Sherman</u> advised me that I needed to sign a waiver so it would be
no conflict on who he was representing,I understood that clearly
but what I didn't understand is why <u>Dennis Sherman</u> didn't inform me
that <u>Adonius Head</u> had changed his statement to something very
different than his first statement he never informed me of this
at the time he asked me to sign the waiver nor did he tell me any
thing after I signed the waiver.


WHEREFORE,Pursuant to Title 28 U.S. C Section 1746
I,hereby <u>Sherman Johnson</u>, the undersigned declare the penalty
of perjury, under the laws of the United States of America and
the State of Illinois that the foregoing statement is true and
correct as I know it to be.

(S) _Sherman Johnson_
          Affiant Sherman Johnson

SUBSCRIBED and SWORN to before me
this _29th_ day of _March_ 2008

_Mary L. We___
      NOTARY PUBLIC

"OFFICIAL SEAL"
MARY L. WEST
Notary Public, State of Illinois
My Commission Expires 4-28-2001

(B)

STATE OF ILLINOIS     )
                             )      SS

COUNTY OF RANDOLPH   )

### AFFIDAVIT

    I, Sherman Johnson , being first duly sworn upon my oath depose and state that the following matters are true and correct made upon my personal knowledge and belief, and if called to be a witness, I am competent to testify thereto.

    That I Sherman Johnson spoke with trial counsel Dennis Sherman and explained to him that I had spoken to Raynard Clopton and that Raynard had information that would be helpful to my case I, also explained to Dennis Sherman that Brian Johnson was the Manager of the building at 55th and Union and may have some information to offer, I also asked Dennis Sherman if he would be talking to Michelle Clopton and the so-called co- defendants, dennis Sherman stated to me not to worry about it, its nothing but hearsay and that the prosecution did not have a case against me, he stated that prosecution had some druged crack user who had made some type of deal to say things that weren't true.

    WHEREFORE, Pursuant to Title 28 U.S. CSection 1746 I, hereby Sherman Johnson, the undersigned declare the penalty of perjury, under the laws of the United States of America and the State of Illinois that the foregoing statement is true and correct as I know it to be.

                    (S) _Sherman Johnson_ .
                          affiant Sherman Johnson

SUBSCRIBED and SWORN to before me
this _29th_ day of _March_ 2000

_Mary L. West_
NOTARY PUBLIC

**"OFFICIAL SEAL"**
MARY L. WEST
Notary Public, State of Illinois
My Commission Expires 4-26-2001

(A)

STATE OF MICHIGAN    )
                     )    SS
COUNTY OF Kent       )

## AFFIDAVIT

I,Raynard Clopton,being first duly sworn upon my oath depose and state that the following matters are true and correct and made upon my personal knowledge and belief,and if I am called upon to be a witness, I am competent to testify to pages 1 and 2 of this AFFIDAVIT!

That I,Raynard Clopton, was asked by Brian Johnson to come by the building at 55th and Union on the first of every month to help him out because it was a major rent day, he always wanted me there with him while he collected the rent, I did this from about September of 1995 until the building caught on fire in March or April of 1996. I would always try to make it there around 11:00 in the morning and I would stay until about 9:00 at night, after we close the Office at about 5:00 in the evening he would give me 30 or 40 dollars,then we would sit around after work and listen to music and have afew beers.Now! at no time during the first of any month from 1995 to 1996 was there ever any guns passed around in the Office by Sherman Johnson or anyone else during the time I work there, nor was there any talk about killing anyone. I would also like to state that I know Adonus Head, Kalesha Webb and Theresa Johnson,very well and I know that they are heavy Cocaine users, I know this because I have seen them smoking crack Cocaine and crushing rocks on Marajuana and smoking it many times. I, also visited Sherman Johnson at the county jail between 1996 and 1997 threw these visits I would explain to him how the police was threatening me telling me that I better say

Page(1)



something bad about Sherman Johnson or they would be charging me
with Murder, I told the police that I was in the Office that day
and on the third floor visiting Michelle Clopton that evening,
and that nothing happen, the police stated that they didnt care
about that because they felt Sherman Johnson was a drug dealer
and even if he had nothing to do with this crime he was still go-
ing to jail for Murder because he's a drug dealer and we will get
him off the street no matter how we do it. I also spoke briefly
with Dennis Sherman in the hallway of the county court house and
explained to him that I knew Theresa Johnson was a heavy drug
user and that I had direct information he could use, he told me
to come back to the court house on Sherman Johnson next court
date, I came back a few times before Sherman Johnson went to
trial, and I again tryed to speak with Dennis Sherman and he just
mutter something while walking threw the court house hallway, so
I never tryed to speak with him again because he kept brushing
me off.

WHEREFORE, Pursant to Title U.S.C Section 1746
I, hereby Raynard Clopton ,the undersigned declare the penalty
of perjury, under the Laws of the United States of America and
the State of Illinois that the foregoing statements are true and
correct as I know it to be.

(S) _Raynard Clopton_ .
Affiant/Raynard Clopton

SUBSRIBED and SWORN to before me.

this 25th day of January, 2000.

_Hattie P. Patterson_ .
NOTARY PUBLIC .

HATTIE P PATTERSON
NOTARY PUBLIC STATE OF MICHIGAN
KENT COUNTY
MY COMMISSION EXP. SEPT 14,2000        PAGE(2)

STATE OF ILLINOIS       )

                        )

COUNTY OF RANDOLPH      )

### AFFIDAVIT

I Leroy Wilson being first duly sworn under oath ,depose and state that the following information within this affidavit is true and correct in substance and in facts:

(A) That I Leroy Wilson did not work for Sherman Johnson selling drugs or work security  protecting drugs sells located at 5636 s. King dr. or any where else at any time place or date.

(B) That I Leroy willson was arrested at the building located at 5636 s.King dr. on February  18,1996 but this arrest was in no way connected to drug sells or drug protection nor was this arrest est in any way connected to Mr.Sherman Johnson.

(C)That I Leroy Wilson had a conversation with Kalesha Webb over the phone who is the Mother of our three Children while residing in the Cook County jail,during this phone conversation Dora Cobbs name came up about her being murder this was sometime in March of 96,I asked Kalesha if see knew anything about the murder of Dora Cobb and her answer was no she did not.

(D)That I Leroy Wilson again had a conversation with Kalesha Webb while she was visiting me at the Cook County jailed which was also in March of 96 I again asked Kalesha if she Knew anything about the murder of Dora Cobb she again told me no she Knew nothing.

pages (1)

(E) That I Leroy Wilson again spoke with Kalesha Webb while residing in the Stateville Correctional Center over the phone during this conversation Kalesha mentioned to me that the police and State prosecutors were threatening her to testify falsely against Sherman Johnson and if she didn't testify to what they wanted her to say even when she had told police and State prosecutors she knew nothing about the murder of Dora Cobb that they police and State prosecutors would charge her with the murder of a Cobb and would be taking away our Children, at that point I told Kalesha that they could not take her Children and that she should not testify.

(F) That I Leroy Wilson would also like to state that after my arrest on Feb.18th 1996, during my interrogation. The police and State prosecutors told me that I would be released if I would implicate Mr. Sherman Johnson in the crimes I was being charged with and that I would also have to come to court and testify to those same implications when I told them that would be false and refused to agree. I was threatened with death lethal injection and slapped several times.

WHEREFORE, Pursuant to Title 28 U.S. C Section 1746 I, hereby Leroy Wilson , the undersigned declare the penalty of prejury , inder the laws of the United States of America and the State of Illinois that the foregoing statements are true and correct as I know it to be .                       (S) _____
                                         Affiant Leroy Wilson

SUBSCRIBED and SWORN to before me
this ___8th___ day of __Jan__, __2001__ .

_____
NOTARY  PUBLIC

"OFFICIAL SEAL"
Patricia Luers
Notary Public, State of Illinois
My Commission Exp. 12/15/2004

EXHIBIT (f)

STATE OF ILLINOIS )

　　　　　　　　　　) 　　SS

COUNTY OF COOK 　)

### AFFIDAVIT

　　I, Brian Johnson, being first duly sworn upon my oath depose and state that the following matters are true and correct made upon my personal knowledge and belief, and if called to be a witness, I am competent to testify thereto.

That I Brian Johnson, was the Manager of the building located at 55th and Union on March 1,1996, my working hour's are from 9to 5 also the first of the Month is a major rent day for the building. Now! during this time there was no gun being passed around in the Office by Sherman Johnson or anyone else nor was there any talk about taking Dora Cobb out to lunch and making sure that's her last meal or killing Dora Cobb or anyone else, also I am alway's in the Office well into the late evening because the Office is really part of my living area.

　　WHEREFORE, Pursuant to Title 28 U.S. C Section 1746 I, hereby Brian Johnson, the undersigned declare the penalty of perjury, under the Laws of the United States of America and the State of Illinois that the foregoing statement is true and correct as I know it to be.

　　　　　　　　　　　　(S) *Brian Johnson*
　　　　　　　　　　　　　　　Affiant Brian Johnson

SUBSCRIBED and SWORN to before me
this 10th day of JANUARY 2000

　　　　　　　*[signature]*
　　　　　　　　NOTARY PUBLIC

**OFFICIAL SEAL**
**FRANK J SMITH**
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES:08/11/02

EXHIBIT (G)

STATE OF ILLINOIS    )

                     )    SS

COUNTY OF COOK       )

## AFFIDAVIT

I, **Brian Johnson**, being first duly sworn upon my oath
depose and state that the following matters are true and correct
and made upon my personal knowledge and belief, and if I am call—
to be a witness, I am competent to testify thereto.

That I **Brian Johnson**, spoke with **Dennis Sherman** in the
hallway of the county court house sometime between 1996 and 1997.
I asked him how **Sherman Johnson** case was coming along, he stated
to me that the case was nothing but hearsay, I also told **Dennis**
**Sherman** that I knew something about this women **Theresa Johnson**
and that I saw her smoking Cocaine in her room on the first floor
of the building at 55th and Union and if he needed me to testify
in, **Sherman Johnson** behalf I would, **Dennis Sherman** stated to me
dont worry about it, the case is nothing but hearsay.

WHEREFORE, Pursuant to Title 28 U.S. C Section 1746
I, hereby **Brian Johnson** , the undersigned declare the penalty
of perjury, under the Laws of the United States of America and
the State of Illinois that the foregoing statement are true and
correct as I know it to be.

(S) _Brian Johnson_ .

Affiant Brian Johnson

SUBSCRIBED and SWORN to before me.

this 25th day of January 2000.

_____.

NOTARY PUBLIC

**OFFICIAL SEAL**
**FRANK J SMITH**
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES:08/11/02